## Tom High v. The State.

No. 1002.   Decided March 1, 1911.

**Malicious Mischief—Insufficiency of the Evidence.**

Where, upon trial of unlawfully wounding with firearms a mule belonging to another, the evidence was entirely circumstantial and did not in any manner connect defendant with the commission of the offense, the conviction could not be sustained.

Appeal from the County Court of Freestone.   Tried below before the Hon. R. L. Williford.

Appeal from a conviction of wounding a mule of another; penalty, a fine of $10.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—The appellant was tried and convicted in the County Court of Freestone County, charged with the offense of unlawfully wounding with firearms a mule belonging to another.

The only ground alleged in the motion for a new trial is that the verdict and judgment are wholly unsupported by the evidence; that the evidence is circumstantial and there is no circumstance in the evidence that in any manner connects defendant with the commission of the offense.   The only evidence introduced on the trial of the cause is as follows:

"Charley Wade, sworn for State, testified:   I live on Mr. Charley Brown's farm in Freestone County; I had a mule in my possession last June belonging to Mr. Charley Brown.   I turned the mule outside on Saturday evening, and on the following Monday evening I was walking through my field with John High, when I heard two gunshots in the direction of defendant's home; I took to be shotgun shots; there had been a shower of rain just prior to the time.   Defendant lives on Mr. Jack Oliver's farm, about one-half mile north from where I live; he is the only person in charge of the Oliver farm. Mr. Oliver's fence is a three-wire fence and very good, but not five feet high; there is a wire gap near defendant's house; it is a very good gap.   On Tuesday evening following the Monday when I heard the gunshots I sent my little boy out to look for the mule, and he found it in the Charley Brown old field, and when he brought it home I found that it had been shot twice with what I took to be a shotgun.   I examined the mule and found it shot in its right hip and behind and side of neck, and its right eye shot out.   I went and got Mr. J. B. Clark and Mr. Nash to see about the mule being shot; I tracked the mule to where it went into defendant's field at the gap and came back out; it seemed to have gone into the field a short distance and eaten some corn and circled in coming out, and from the

track it seemed to have been running when it came out. The track looked like Mr. Brown's mule track; I looked at the track at home and took the track in the field to be same track; the defendant had a smaller mule that made a smaller track. This was in Freestone County, Texas, on Monday, in June, 1910, just after emancipation day.

"Crossed by defendant: I don't know whether the mule was shot inside the enclosure of defendant or not.

"John High, sworn for State, testified: I live near defendant Tom High; some time last June I was walking with Charley Wade through his field, and I heard two gunshots in the direction of defendant's home; I took them to be shotgun shots. Wade remarked at the time that Tom is shooting squirrels already; there had just been a shower of rain. I did not think anything about the shooting at the time; I did not see the mule after it was wounded. Tom High lives about one-half mile north from Charley Wade; another man lives about one-fourth mile east from Tom High, and still another about one-half mile west from defendant's house. No one lives north from Tom High.

"J. B. Clark, sworn for the State, testified: I live near defendant Tom High; some time last June Charley Wade came after me and asked me to go over with him and see about a mule that belonged to Charley Brown, of Navarro County, which had been shot. I went over and we went to defendant's house but found no one at home; we went down to the gap; I saw the mule. It had been shot in its right hip and rectum and side of neck, and its right eye had been shot out. It seemed to have been shot from behind; it could have been wounded with one gunshot and maybe two. The shot were small No. 6 shot. I picked some of them out of the mule. When we got to the gap I went in and saw where a mule had been in the field a short distance; I saw Tom's track and the mule track and also saw two gun wads lying on the ground near the mule track; I did not see where the mule went out. I saw no tracks but Tom's where the mule had been. It had rained a shower and the tracks were plain. While we were at the gap Tom High, the defendant, came up and Charley Wade in some way intimated or accused Tom with having shot the mule. Tom denied it and jumped on Charley Wade and we had one of the biggest nigger fights that I ever saw; this put an end to the investigation and we left.

"Crossed by defendant: I don't know whether the mule was shot inside the enclosure or not."

While we are always loath to disturb the verdict on the insufficiency of the evidence, when there is no evidence other than suspicious circumstances, we can not let the verdict stand. Mere suspicion will not support a judgment.

*Reversed and remanded.*