**Marshall CLAYTON et al., Relators,**

v.

**Frank CLAYTON et al., Respondents.**

**No. 7026.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 10, 1957.

Rehearing Denied Dec. 31, 1957.

L. F. Burke, W. C. Holcombe, Longview, for appellant.

Fred Erisman, Wm. Hurwitz, Longview, Richard F. Loomis, Jr., Rosenfield, Berwald & Mittenthal, Dallas, for appellee.

CHADICK, Chief Justice.

This is an application for a writ of prohibition filed as an original proceeding in this Court. The writ prayed for is denied.

The application arises out of certain probate proceedings originating in the County Court of Gregg County, Texas, which are here described to the extent necessary for an understanding of the disposition made of the application by this Court.

After the death of Matilda C. Clayton in Gregg County, on December 26, 1955, Rufus Williams filed for probate on January 4, 1956, an instrument dated July 22, 1952, purporting to be Matilda C. Clayton's will. The instrument tendered, besides making a testamentary disposition of Matilda C. Clayton's estate, appointed Williams independent executor of the will without bond. The proceeding in County Court was numbered and styled, "No. 4973, In Re: Estate of Matilda C. Clayton, Deceased." Certain heirs at law of the deceased, for themselves and other heirs, filed a contest to the application for probate of the will, and after hearing, the County Judge on February 28, 1956, denied the probate application, discharged Williams as temporary administrator and ap-

pointed another in his place. Three of the beneficiaries under the terms of the proffered will filed an appeal bond, duly approved, on March 8, 1956, in the County Court. This appeal bond, the original papers and a certified judgment of the County Court were thereafter filed in a District Court of Gregg County on April 19, 1956, and this action was numbered and styled, "No. 28,497-B, In Re: Estate of Matilda C. Clayton, Deceased." Thereafter, Marshall Clayton and others interested in the estate, moved to dismiss the appeal, which motion was granted and the appeal dismissed. Frank Clayton appealed the District Court judgment of dismissal to this Court of Civil Appeals, and this Court in an opinion reported as Clayton v. Clayton, 297 S.W.2d 255, affirmed the District Court's judgment of dismissal. The relevant portion of the affirmed judgment of the District Court of Gregg County read:

"It is, therefore ordered, adjudged and decreed that the Motion to Dismiss the appeal from County Court in regard to the Estate of Matilda C. Clayton, Deceased, No. 4973, County Court of Gregg County, Texas, and appearing on the docket of this Court under the above styled and numbered cause (No. 28,497-B) should be and is hereby dismissed at the cost of the appellants, and the District Clerk of this Court is hereby directed to certify this Judgment to the County Probate Court of Gregg County, Texas, * *"

The Supreme Court refused application for writ of error, and the District Court's dismissal quoted above became final.

Frank Clayton and other prospective beneficiaries under the purported will being interested in securing the probate of that instrument filed an application for certiorari in a District Court of Gregg County, on May 10, 1957, and amended the same June 11, 1957. May 17, 1957, the Judge of the District Court granted the application and set a bond. The required bond was

filed, the writ issued and the transcript and original papers were duly filed in the District Court as an action numbered and styled, "No. 39,395–B, Corene Clayton, et al. v. Marshall Clayton, et al." The grounds of error specified in the motion for certiorari to revise and correct the County Court Probate judgment briefly stated, are: The Court erred in (1) finding Matilda C. Clayton of unsound mind on or about July 22, 1952; (2) denying the purported will to probate; (3) finding Rufus C. Williams was incompetent to serve as temporary administrator; (4) overruling exceptions urged to the petition of the contestants; and (5) overruling the motion of Richard F. Loomis, Jr., to be dismissed as a party to the contest and assessing court costs against him.

On September 5, 1957, Marshall Clayton and some 28 other parties aligning themselves him with him filed this petition for writ of prohibition complaining of Frank Clayton and 10 others, including the Judge of the District Court granting the writ of certiorari and in brief alleged that the parties respondent were attempting to relitigate issues in the pending cause No. 29,395–B, Corene Clayton, et al. v. Marshall Clayton et al., that had been litigated and adjudicated in No. 28,497–B In Re Estate of Matilda C. Clayton (this last being on appeal styled and numbered 6934, Frank Clayton, Appellant v. Marshall Clayton, Appellee, in this Court of Civil Appeals and reported as aforesaid). The prayer is for a writ to prohibit Frank Clayton and those aligned with him from prosecuting any cause of action involving issues pertaining to the probating of the purported will of Matilda C. Clayton, and to cease and desist from prosecuting cause of action No. 29,395–B, Corene Clayton, et al. v. Marshall Clayton, et al., and to make the writ applicable likewise to the Judge of the District Court of Gregg County, wherein the cause is pending by requiring him to cease and desist from entertaining any action involving such issues and the suit last mentioned.

A fair appraisal of the specific grounds of error set out in the respondents' application for certiorari leaves no doubt but that some of the issues raised by such grounds could be determined only by finding facts, while others could be determined solely by reference to the law applicable. Stated otherwise, some are fact questions, some law questions, and others are mixed questions of law and fact. As an illustration, it would require proof of facts to determine whether the Judge of the County Court erred in finding that Matilda C. Clayton was insane on or about July 22, 1952. A law question would arise in determining the validity of special exceptions to the relators' contest of the probate application. A mixed question of law and fact is presented in testing whether the instrument offered as a will was valid as such and had been made and witnessed in conformity with law and should be admitted to probate.

As will be seen by views later expressed and authorities cited, it is thought that the respondents are entitled to proceed in the District Court of Gregg County with their appeal by certiorari, regardless of whether the grounds that are specified in the application for the writ be those of fact or of law. The relators' contention that the District Court may only revise and correct errors of law in the judgments of the County Court in probate cases appealed by certiorari is next discussed.

The relators rely principally upon three cases to sustain them in their contention. These cases are State v. De Silva, 105 Tex. 95, 145 S.W. 330; Schwind v. Goodman, Tex.Com.App., 221 S.W. 579; and Richardson v. Lingo, Tex.Civ.App., 273 S.W. 2d 119, wr. ref., n. r. e. Out of deference to the high standing at the Bar of counsel for the relators, and the respect this Court has for any legal proposition advanced by them, it is felt that a discussion of the cases should be made to show why they are not applicable to the situation presented by this record.

State v. De Silva, supra, is not concerned with a probate case, but on the other hand, is a case arising as a consequence of the County Judge of Jefferson County forfeiting the liquor license of Ben De Silva. Thereafter De Silva applied to a District Court of that county for a writ of certiorari which was granted and the judgment forfeiting the liquor license suspended. It is not necessary to an understanding of the case to describe the various other proceedings and legal maneuvers preceding a presentation to the Supreme Court of certified questions, among which was this: "Did * * * the District Court have the right under the provisions of Sec. 8, Art. 5 of the Constitution [Vernon's Ann.St.] to issue the writ of certiorari and thereby remove the proceedings into that court for review or to interfere, in any way, by means of the writ of certiorari with the due execution of the order of the County Judge?" In answering the question, the Court held that forfeiting the license was not a judicial act but was a ministerial enforcement of the law and that certiorari was not available to review the County Judge's action. Thus decision in that case was not upon any ground involved here, and could have no application, but because of its language this further reference is made. The opinion does not emphasize the common law character of the writ, yet it makes it abundantly clear that such is the character of writ that is under consideration. In the body of the opinion it quotes from 4 Encyc. of Pleading & Practice, pp. 8–11: "For it is not the office of a common-law writ of certiorari to review ministerial acts, but only to correct errors of law apparent on admitted or established facts—never to settle disputed points." [105 Tex. 95, 145 S.W. 333.] The distinction between the writ discussed and that made available by statute in probate proceedings lies in the nature of the writ. The court had under consideration constitutional power of the District Court to issue the common law writ of certiorari which is a discretionary writ and may be issued only upon special

grounds, whereas the issuance of the writ of certiorari in probate cases is governed by statute and is not made to depend upon the considerations governing the common law writ.

Schwind v. Goodman, supra, arose out of the efforts of children of a deceased by certiorari from the District Court to review certain orders of sale of real estate entered by the County Court of Orange County in a guardianship proceeding. As the opinion of the Commission of Appeals is understood, there is no conflict between its expressed holding and the position of the respondents in this case. The Commission through Justice McClendon said [221 S.W. 580]:

"The proceeding by certiorari is direct and appellate in its nature; but there is this essential difference between an appeal by certiorari and an ordinary appeal from the probate to the district court. An appeal removes the matter complained of to the district court for trial de novo as a matter of right; whereas certiorari reviews the action of the probate court for errors committed by that court. The trial in the district court, it is true, is de novo, but the issues are confined to errors of the county court specifically set forth in the application for the writ; and, unless there be error, the order or decision of the county court will not be disturbed."

Nor is this holding by the court in conflict with the opinion of the Supreme Court in McDonald v. Edwards, 137 Tex. 423, 153 S.W.2d 567.

The third case, Richardson v. Lingo, supra, by the Galveston Court, brings together for discussion some 9 decisions by the various Courts of Civil Appeals and the Commission of Appeals and it, along with Robertson v. National Spiritualists' Ass'n of United States of America, Tex.Civ.App., 25 S.W.2d 889, seem to be nearest in point with the relators' case and seem to support the relators' position that only questions

of law may be considered in an appeal from the County Probate Court to the District Court by certiorari. The various cases discussed in Richardson v. Lingo are listed in the footnotes[1] and will be commented on hereinafter, but first it would seem proper to explore the ground upon which the conclusions in the case are based to determine if it is sound authority. As noted, the Supreme Court disposed of the case by refusing a writ of error, with the notation "no reversible error." Rule 483, Vernon's Ann.Texas Rules of Civil Procedure, directs the Supreme Court to use the notation "Refused, No Reversible Error", when it is not satisfied that the opinion of the Court of Civil Appeals in all respects has correctly declared the law, but is of the opinion that the application for writ of error presents no error which requires reversal. With that Rule in mind, on examination of the opinion, it is found in 273 S.W.2d at page 121 of the reported case that a part of the Court's statement of the case was:

"An examination of the appellants' application for writ of certiorari * * * fails to reveal an allegation wherein they have alleged that the lower Court committed any error, nor does such application 'distinctly set forth any errors' in the orders of the Probate Court of which appellants complain. * * *

"With respect to the application for writ of certiorari, we first take up the allegations of Paragraph No. II in which the applicant alleges the Will left by Mrs. Rose Lingo, the order of the Probate Judge admitting said Will to probate, and an order appointing a temporary administrator. Nowhere is there alleged any error of the Pro-

bate Court in so admitting said Will to probate or in appointing the temporary administrator. * * *

"An examination of Paragraphs IV and V of the said appellants' application for writ of certiorari (shows it) failed to disclose * * * any allegations wherein it is alleged that the lower Court committed any error in the proceedings in such Court. * * *"

From these statements, it is obvious that the Supreme Court could have and in view of the authorities yet to be discussed, probably did affirm the judgment of the Court of Civil Appeals because the appellants, Richardson, et al., did not, as required by Rule 344, distinctly set forth the error in the proceedings sought to be reviewed.

Each of the nine cases cited in the opinion has been examined and only three may be said to support the principles announced in the opinion. The other cases may be distinguished, except Schwind v. Goodman, supra, and Lafleaur v. Switzer, Tex.Civ. App., 109 S.W.2d 239, which are authority to the contrary of the conclusions announced in Richardson v. Lingo, supra.

The judgment in Robertson v. National Spiritualists' Ass'n of United States of America, supra, may also be supported upon other grounds than the holding that certiorari was not available to revise and correct the order of the County Court refusing the probate of the will involved. In fact, on motion for rehearing, the Court of Civil Appeals went to some pains to show that here was an additional ground upon which the judgment should be affirmed. That case as well as Richardson v. Lingo and the language in several others which seems to be out of harmony with McDonald

1. Comstock v. Lomax, Tex.Civ.App., 135 S.W. 185; Johnson v. Coit, Tex.Civ.App., 48 S.W.2d 397; Dunaway v. Easter, Tex.Com.App., 133 Tex. 309, 129 S.W.2d 286; Clopper v. Hutcheson, 16 Tex.Civ. App. 157, 40 S.W. 604; State v. De Silva, 105 Tex. 95, 145 S.W. 330; George v. First Nat. Bank of Tulia, Tex.Civ.App., 67 S.W.2d 324; Hayden v. Middleton, Tex.Civ.App., 135 S.W.2d 281; Lafleaur v. Switzer, Tex.Civ.App., 109 S.W.2d 239; Schwind v. Goodman, Tex.Com.App., 221 S.W. 579.

v. Edwards may be accounted for by the confusion arising out of failure to distinguish between the common law writ of certiorari and the writ made available by statute in probate cases. The common law writ, among other things, requires that good cause be shown for failure to follow other usual appellate procedures and that injury resulted to the applicant, etc. To so limit an appeal by certiorari in probate proceedings is a judicial engraftment of a limitation not expressed in a clear and unambiguous statute and has support neither in reason nor authority.

The construction put on the various cases mentioned in the foregoing paragraphs is strengthened when considered in the light of McDonald v. Edwards, supra. The Supreme Court in this latter case in 1951 had before it the question: "Whether the district court in such writ of certiorari proceedings had jurisdiction to set aside and annul the probate orders previously entered and to annul and cancel the deed executed by virtue of such orders, under which the sale of the land was made." The administratrix of the estate of Ed E. Gault had, following application and order by the probate court, executed and delivered a deed to a tract of land to an insurance company in cancellation of indebtedness to such company secured by a first lien on the land. The conveyance was made in accordance with the order and other creditors of the deceased sued out a writ of certiorari, and (as shown by the opinion in the same case in the Court of Civil Appeals, reported in 115 S.W.2d 762, 764) attacked the order authorizing the conveyance, "alleging, as one error committed by the county court, that the land was worth from $10,000 to $18,000 in excess of the debt of the insurance company, for which reason the sale was not to the interest of the estate." In the same paragraph the court further states: "The only issue of fact made by the answers of the defendants related to the actual or market value of the 395 acres of land on December 7, 1935." An issue was submitted to the jury as to the reasonable cash market value per acre of the land involved. Beyond question, the Supreme Court had before it a case containing an appeal from county probate court to the district court involving a question of fact, as distinguished from a question of law, when it in the course of the opinion said [137 Tex. 423, 153 S.W.2d 569]: "We shall not confuse the issues by a discussion of the different methods of appeal authorized by statute, but will confine our discussion to the precise question before us—an appeal by certiorari." And in the second paragraph thereafter said: "This Court has liberally construed the right of parties to invoke the jurisdiction of the district court in certiorari proceedings to review the orders of the probate court. Connell v. Chandler, 11 Tex. 249; Reynolds v. Prestidge, Tex.Civ.App., 228 S.W. 358; Williams v. Steele, 101 Tex. 382, 108 S.W. 155; Heaton v. Buhler, 60 Tex.Civ.App. 423, 127 S.W. 1078; Norris v. Duncan, 21 Tex. 594; Jirou v. Jirou, 104 Tex. 136, 135 S.W. 114; Linch v. Broad, 70 Tex. 92, 6 S.W. 751; 21 Tex.Jur. pp. 375–378, §§ 110 and 111." Then quoting and adopting the language of Jirou v. Jirou, 104 Tex. 136, 135 S.W. 114, 116, said: " 'It is true that the jurisdiction of the district court over the county court is appellate in its nature, but it may be exercised by *a trial upon the facts* of the case as well as by a revision of the record made in the lower court.' " (Emphasis added.) Immediately following, the court goes on to discuss the nature of a certiorari proceeding in probate court and says:

"It is true that a certiorari proceeding in a probate court is one of the methods of appeal provided by statute. At the same time, it is a direct proceeding. Clearly, under the holdings in Connell v. Chandler, supra; Reynolds v. Prestidge, supra; Jirou v. Jirou, supra; and Linch v. Broad, supra, the district court, in a certiorari proceeding, has power to exercise its appellate probate jurisdiction to annul a probate order and the deed executed by virtue of such order. The rule has been

stated in 21 Tex.Jur., pp. 376 and 377, in the following language:

" 'The proceeding by certiorari is direct and it is in no sense a collateral attack. While it is appellate in its nature, it seems that the powers of the court in the trial and disposition of the matters in issue are not precisely the same as those of an appellate or revisory court.

" 'The statute provides that the trial in the District Court shall be de novo, * * *. Accordingly it has been held that the District Court may neither affirm nor reverse the order of the County Court upon the record sent up; *it must retry the case upon the merits as if it were an original suit.*' " (Emphasis added.)

A check by reference to Sheppard's S. W. Reporter Citations indicates that this case has not been overruled by name or that any question it discusses has been invalidated by a later opinion.

Going back to probate case No. 4973, In Re: Matilda C. Clayton, Deceased, and the appeal thereof to the District Court which was dismissed and the judgment of the District Court appealed to this Court and reported as Clayton v. Clayton, 297 S.W.2d 255, 260, writ ref., this Court of Civil Appeals held: "The District Court acquired no jurisdiction of the case, except to dismiss the same." Thus it confirmed that no appeal was perfected and the appellate jurisdiction of the District Court was never exercised to revise and correct the County Court judgment denying probate of the will. The judgment of the District Court was one refusing to accept jurisdiction because the statutory appeal was not perfected within the time prescribed by law. Therefore, this application for prohibition is not made in a case where the appellate power of the District Court has once been invoked or exercised, but on the contrary, it is a case where the appellate power of the District Court is

sought to be invoked by certiorari within the statutory time prescribed for an appeal by such writ. See Zamora v. Garza, Tex.Civ.App., 117 S.W.2d 165. No exhaustive research into the cases in which appeal by certiorari from an order either admitting a will to probate or refusing it probate has been made, but reference to the cases annotated under Sec. 30, Vernon's Ann.Texas St. Probate Code, shows at least seven in that category, to-wit: Leatherwood v. Stephens, Tex.Com.App., 24 S.W.2d 819; Simmons v. Gardner, Tex. Civ.App., 134 S.W.2d 338, reversed 135 Tex. 408, 114 S.W.2d 538; Hayden v. Middleton, Tex.Civ.App., 135 S.W.2d 281; Williams v. Carter, Tex.Civ.App., 176 S.W. 2d 580, er. ref.; Mitchell v. Rutter, Tex. Civ.App., 221 S.W.2d 979; Heaton v. Buhler, 60 Tex.Civ.App. 423, 127 S.W. 1078; and Ripley v. Dearing, Tex.Civ.App., 153 S.W.2d 243, er. ref.

■■ The weight of these cases together with the authoritative pronouncement of the Supreme Court in McDonald v. Edwards, appear conclusive that parties interested in the estate of a decedent may appeal from judgments and orders to the District Court by certiorari for a revision and correction of the County Court's orders either admitting or denying a will to probate upon such errors as are distinctly set forth in the application for the writ in the District Court whether they are of law or of fact. Though this case is not directly reviewable by the Supreme Court, as noted in Turner v. Chandler, Tex.Civ. App., 304 S.W.2d 687, this Court is not at liberty to disregard the authoritative expressions of the law made by the Supreme Court, but is bound by and must follow the law so pronounced.

■ Perhaps a rationale of the statutes and rules pertaining to appellate review of proceedings in a probate court is in order. Without trying to be definitive, it may be said that under Texas probate laws a will must be tendered initially in County Court for probate and that there is no provision

for jury trial in the County Court in connection with any issue arising in the probate proceeding, and with some exceptions, notice other than posting is not necessary. It is entirely possible for a will to be probated without persons interested in the estate involved having any notice whatever, or if they have notice, not having an opportunity to try their case and submit issues arising to a jury for determination. This initial probate proceeding corresponds somewhat to a probate in common form in other jurisdictions. Sec. 30, Vernon's Ann.Probate Code, R–344 and 350 set up a mode of appeal in addition to the statutory direct appeal which would permit persons having no notice of the probate of a will or perhaps those not aware of the effects of a judgment or order in connection therewith but having an interest in the proceedings, to come into court and have a trial with issues of fact to be decided by a jury. This latter would correspond somewhat to a probate in solemn form in other jurisdictions. It is fundamental to our system of justice and the intention and policy of the law to permit all persons to have a trial by jury of any facts affecting their property rights. These methods of appeal are an effort to guarantee that right while at the same time the law affords an inexpensive method to dispatch probate matters when there is no controversy existing between the parties interested in the proceeding. The statutes and rules are broad and inclusive enough to permit an appeal limited only by their own provisions in either of the modes set out.

The respondents being entitled to a review of the orders and judgment of the County Court in Cause No. 39,395–B, Corene Clayton et al. v. Marshall Clayton, no occasion is shown by this record for this Court to prohibit them from proceeding in that cause, and for that reason it is not necessary to discuss other matters raised in the briefs of the parties.

The application for writ of prohibition is denied.

FANNING, Justice (concurring).

After carefully studying the record and the excellent briefs submitted by able counsel representing the opposing parties, it is my considered opinion that the writ of prohibition prayed for in this cause should be denied.

It is my considered judgment that the decision of the Supreme Court of Texas in the case of McDonald v. Edwards, 137 Tex. 423, 153 S.W.2d 567, relied upon by respondents, is clearly controlling on the question in this case and is more authoritative than the cases of Richardson v. Lingo, Tex.Civ.App., 273 S.W.2d 119, wr. ref. n. r. e., and Robertson v. National Spiritualists' Ass'n of United States of America, Tex.Civ.App., 25 S.W.2d 889, wr. dis., and the other cases relied on by relators. Chief Justice CHADICK in his majority opinion in this case discusses fully McDonald v. Edwards, supra, and other numerous authorities in harmony therewith, relied upon by respondents, and in my opinion, Judge CHADICK also correctly analyzes the principal cases relied on by relators.

The writ of certiorari sought by respondents is a statutory writ and not a common law writ. The Supreme Court in McDonald v. Edwards, supra, stated [137 Tex. 423, 153 S.W.2d 569]: "This Court has liberally construed the rights of the parties to invoke the jurisdiction of the district court in certiorari proceedings to review the orders of the probate court" (citing numerous authorities), and then quoting from Jirou v. Jirou, 104 Tex. 136, 135 S.W. 114, further stated: "It is true that the jurisdiction of the district court over the county court is appellate in its nature, but it may be exercised by a trial upon the facts of the case as well as by a revision of the record made in the lower court." The Supreme Court in McDonald v. Edwards, supra, further stated:

"It is true that a certiorari proceeding in a probate matter is one of the

methods of appeal provided by statute. At the same time, it is a direct proceeding. Clearly, under the holdings in Connell v. Chandler, supra; Reynolds v. Prestidge, supra; Jirou v. Jirou, supra; and Linch v. Broad, supra, the district court, in a certiorari proceeding, has power to exercise its appellate probate jurisdiction to annul a probate order and the deed executed by virtue of such order. The rule has been stated in 21 Tex.Jur., pp. 376 and 377, in the following language:

" 'The proceeding by certiorari is direct and it is in no sense a collateral attack. While it is appellate in its nature, it seems that the powers of the court in the trial and disposition of the matters in issue are not precisely the same as those of an appellate or revisory court.

" 'The statute provides that the trial in the District Court shall be de novo, * * *. Accordingly it has been held that the District Court may neither affirm nor reverse the order of the County Court upon the record sent up; *it must retry the case upon the merits as if it were an original suit.'*

"In Linch v. Broad, supra (70 Tex. 92, 6 S.W. 754), it was said: 'The proceeding by certiorari is a direct proceeding, and cannot be considered, in any sense, a collateral proceeding.'

*"The jurisdiction of the district court was invoked by certiorari proceedings as authorized by the statutes. * * * The case shall be tried de novo, and the issues shall be confined to the grounds of error specified in the application for the writ."* (Emphasis and interpolation added.)

The pronouncement of the Supreme Court of Texas in McDonald v. Edwards, supra, has not been overruled and, in my opinion, constitutes the best and paramount authority upon the question involved in the case at bar.

Chief Justice Chadick in the majority opinion in this case also cited the case of Zamora v. Garza, Tex.Civ.App., San Antonio, 117 S.W.2d 165, no writ history, opinion by Justice Slatton, later an Associate Justice of the Texas Supreme Court. This case, while not as authoritative as the Supreme Court case of McDonald v. Edwards, supra, is very closely in point with the question here involved, is in complete harmony with McDonald v. Edwards, supra, and in my opinion is an unusually well-reasoned case. In the case at bar respondents tried to appeal their probate case from the County Court to the District Court and get a de novo trial—they filed notice of appeal, and an appeal bond but failed to file in the District Court the transcript required by Rule 330a, Texas Rules of Civil Procedure, (and/or the original County Court papers) and consequently did not perfect their appeal—their appeal was consequently dismissed by the District Court, which judgment of dismissal was affirmed by this Court and writ of error was refused by the Supreme Court. Not ever having had a de novo trial in the District Court, respondents in the case at bar have sought such a de novo trial in the District Court by the statutory writ of certiorari method, which proceeding was timely filed by respondents. The case at bar is a case where no de novo trial on the merits has ever been had in the District Court in the matter. In the Zamora v. Garza case, supra, the plaintiff gave notice of appeal but did not perfect his appeal, and the plaintiff had never had a de novo trial on the merits in the District Court in the matter, and sought a de novo trial through the statutory certiorari method, as in the case at bar. We quote from the court's opinion in Zamora v. Garza, supra, [117 S.W.2d 166] as follows:

"Under article 932, Revised Civil Statutes 1925, writ may issue from the District or County Court for the purpose of reviewing a case upon its merits. Some distinction has been made in this State as to the nature of

this remedy as distinguished from an appeal. 9 Tex.Jur., § 2, p. 21. *In the same text, in section 4, it is broadly stated that certiorari to correct the orders or judgments of the County Court in probate matters may be resorted to without first pursuing the remedy by appeal or assigning any excuse for not taking an appeal, certiorari and appeal being cumulative remedies. The cases cited seem to support the text.*

"Taking the averments of appellant's application for the writ as true, which we must, when tested by general demurrer, we are of the opinion that such application stated a good cause of action. Otherwise stated, if the averments of the application are true, the appellant, instead of appellee, was entitled to be appointed as administrator de bonis non of the estate of Romulo Garza, deceased. Friend v. Boren, 43 Tex.Civ.App. 33, 95 S.W. 711.

*"The trial court seemed to be of the opinion that because appellant had given notice of appeal, but failed to perfect the same, that he was not entitled to the writ.* The Friend Case, supra, seems to answer that contention. In that case it is said (95 S.W. at page 712): *'The petition was filed within the statutory period, and a failure to appeal from the order of the county court* approving the final report and discharging appellant as administrator *did not preclude the remedy by certiorari, of which appellees seasonably availed themselves. Under our law the latter is as distinctly statutory, and hence legal as the former, and is not made dependent upon a showing of cause why the remedy of an appeal was not pursued.'*

*"The present case is not one where the appellant pursued his remedy of appeal and lost, he merely gave notice of appeal, but did not perfect the same.* It is contended by the appellee, and seems to have been sustained by the trial court, that the appellant having failed to allege any injury to the estate, his petition did not state a cause of action for a review, upon the case of Schwind v. Goodman, Tex.Com. App., Section B, 221 S.W. 579.

"In that case Mr. Justice McClendon quoted from Cyc. as follows (page 580): 'If the error is manifest and substantial injury has been sustained, the writ should be allowed; but the court will not award the writ where the errors complained of are merely informal or technical, or where, although there is error in fact, substantial justice has been done, and no appreciable injury has resulted to the complaining party.'

"In the present case, if the appellant's allegations in his application are true, he has been denied a statutory right to be appointed administrator de bonis non of the estate of Romulo Garza, deceased. Certainly, the denial of that right shows an 'appreciable injury has resulted to (him) the complaining party.'

"For the erroneous action of the trial court in sustaining the general demurrer, the judgment must be reversed and remanded for trial. It is so ordered."

I fully agree with Chief Justice CHADICK'S opinion in this cause and concur in the denial of the writ of prohibition sought by relators.

This was originally written to be the opinion of the Court, but since the majority of the Court has concluded that the writ should be denied, I file the same as my dissent in the case, with minor changes.

DAVIS, Justice (dissenting).

This is an original proceeding for a Writ of Prohibition to prohibit Frank Clayton and several others from prosecuting an attempted appeal by way of certiorari from a judgment of the County Court to the District Court of Gregg County, Texas. A history of the case is necessary.

Matilda C. Clayton died in Gregg County, Texas, on December 26, 1955. On January 4, 1956, one Rufus Williams filed an instrument for probate in the County Court of Gregg County, Texas, purporting to be the last will and testament of Matilda C. Clayton in which he, Rufus Williams, was appointed independent executor without bond. The purported will was dated July 22, 1952. The petition for probate was entered upon the docket of the Probate Court of Gregg County, Texas, numbered and styled as follows: "No. 4973: in Re: Estate of Matilda C. Clayton, Deceased." Rufus Williams was appointed temporary administrator and notice of the application to probate the will was issued. On January 15, 1956, Marshall Clayton and many other heirs of Matilda C. Clayton, Deceased, individually and as representatives of all the heirs of Matilda C. Clayton, filed their petition to contest the application of Rufus Williams to probate the purported will of Matilda C. Clayton. On February 27, 1956, the application to probate the purported will, as well as the contest thereof, was commenced and heard by the County Judge of Gregg County, Texas. On February 28, 1956, after what appears to have been a full-fledged hearing on the application to probate the will as well as on the contest thereof, the County Court found and concluded as a fact that Matilda C. Clayton was of unsound mind on July 22, 1952, the date she executed the said purported will, and entered a judgment refusing to admit the instrument to probate. On March 8, 1956, three of the beneficiaries under the purported will of Matilda C. Clayton filed an appeal bond in the County Court, which was approved on said date. The original

papers and appeal bond along with a certified copy of the judgment of the County Court was filed in the District Court on April 19, 1956, which was more than 30 days from the date of the judgment in the County Court (February 28, 1956) as required by Rule 330a, Vernon's Ann.Texas Rules of Civil Procedure. Marshall Clayton and others filed a motion to dismiss the appeal because the record had not been filed within the time required by law. The judge of the District Court in cause No. 28,497–B, styled, "In Re Estate of Matilda C. Clayton, Deceased," sustained the motion to dismiss the appeal; holding, in effect, that the judgment of the County Court had become final. An appeal from that judgment of dismissal was taken to this Court by Frank Clayton only. This Court, in cause No. 6934, styled "Frank Clayton, Appellant, v. Marshall Clayton, et al., Appellees," affirmed the judgment of the trial court, 297 S.W.2d 255, and the Supreme Court "refused" an application for writ of error by Frank Clayton.

On May 10, 1957, Frank Clayton and numerous others, being interested in getting the purported will of Matilda C. Clayton, Deceased, admitted to probate, filed an "application for certiorari" in the District Court of Gregg County, Texas. On May 17, 1956, an order was signed by the Judge of the 124th District Court granting the application, ordering a writ of certiorari to issue, and fixing a bond. On June 11, 1957, an amended application for certiorari was filed. The writ of certiorari was issued by the District Clerk of Gregg County. The bond fixed by the District Judge was filed and approved and the transcript and original papers in the County Court case were duly prepared and filed in the District Court. All these proceedings were filed under No. 39,295–B on the civil docket of the 124th District Court, and styled "Corean Clayton et al. v. Marshall Clayton, et al."

On September 5, 1957, Marshall Clayton and numerous others, with the permission of this Court having been granted, filed

their petition for a writ of prohibition, contending that the judgment of the County Court denying the application to probate the purported will of Matilda C. Clayton was a final and binding judgment; and that this Court having sustained the judgment of the District Court in dismissing the direct appeal, such judgment became the judgment of this Court, and seeking a writ prohibiting the said Frank Clayton and all others who desire to reverse the judgment of the County Court and their agents and attorneys from filing and prosecuting any suit or cause of action involving the issues pertaining to the probating of the purported will of Matilda C. Clayton, Deceased, and to cease and desist from further prosecuting the cause of action No. 29,395–B, styled Corean Clayton et al. v. Marshall Clayton et al.; and, to command the Hon. David C. Moore, Judge of the 124th Judicial District Court of Texas, to cease and desist from entertaining any suit or cause of action involving said issues of probating said purported will and from proceeding further in said cause No. 29,395–B, other than to set aside his order fixing the amount of bond in said cause and dismiss said suit in its entirety.

The judgment of the County Court denying the will to probate is a final judgment. 14–A Tex.Jur., 121, Sec. 105, and authorities therein cited. See also 14–B Tex.Jur. 91, Sec. 1022, and authorities therein cited.

The respondents take the position that they are entitled to prosecute an appeal from the County Court judgment as a matter of right, and base their contentions upon Sec. 30 of Vernon's Texas Annotated Probate Code. They cite the case of McDonald v. Edwards, Tex.Civ. App., 115 S.W.2d 762, affirmed 137 Tex. 423, 153 S.W.2d 567, 569, in support of their contention. It will be noted that in that case the court said: " * * * *It would serve no useful purpose to discuss here the rules relating to a direct appeal from the probate court to the dis-trict court, because that question is not involved here.*" (Emphasis added.)

A direct appeal was taken in cause No. 4973 when the appeal bond was filed within the time prescribed by law. That appeal was abandoned by failure to file the record in the district court within the time required by law. The county court was deprived of jurisdiction to act in the case from the time the appeal bond was filed until the period of time had elapsed in which to file the original papers and transcript in the district court. When the period of time was up to file the papers and transcript in the court, jurisdiction reverted to the county court. Bearing in mind that only three of the respondents filed an appeal bond in the county court case, the remaining respondents would have reaped the benefit of any favorable judgment that might have been obtained by those three parties had they duly prosecuted their appeal and prevailed. It is well-established law that a party is not entitled to certiorari after he has taken the case on direct appeal to the district court. 9 Tex.Jur. pp. 23–24, Sec. 4; Pearce v. Leitch, 43 Tex.Civ.App. 398, 96 S.W. 1094; and Harbison v. Harbison, Tex.Civ.App., 56 S.W. 1006. The holding of the majority in this proceeding is in direct conflict with the last cited cases.

The respondents in this case take the position that it was solely the fault of the County Clerk that the appeal was not filed in the District Court within the time prescribed by law. There is nowhere in the records that have been brought before this Court any form of request to the County Clerk to transmit the papers in the original proceedings or a transcript to the District Court. The law requires diligence on behalf of those appealing a case to see that the necessary instruments are filed within the time prescribed by law.

Respondents challenge the jurisdiction of this Court to grant the relief prayed for herein and contend that the judgment of this Court affirming the judgment of the

District Court dismissing the appeal from the County Court is in effect a separate and distinct judgment from that which they seek to appeal to the District Court by certiorari. The District Court and this Court have at least impliedly held that the judgment of the County Court denying the will to probate is a final judgment and binding upon the world, and this Court not only has the jurisdiction to grant the relief prayed for but the petitioners are entitled to the relief sought. The holding of the Supreme Court in the case of Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994, is in point, and the court not only has jurisdiction to enforce its judgment, but it is the court's duty to do so. In the case of Hillhouse v. Allumbaugh, Tex.Civ. App., 238 S.W.2d 799, 800, the court said: " * * * It is only when the appeal to the district court is dismissed because of failure properly to effect the appeal that the judgment of the county court remains in effect. In such case, the county court judgment remains in effect because nothing has been done sufficient in law to vacate it." Therefore, when the Supreme Court unqualifiedly refused a writ of error in the case of Clayton v. Clayton, supra, the judgment of the trial court not only became final, but also it became the judgment of this Court; and the petitioners herein are entitled to the benefits of that judgment without continuing to be disturbed and harrassed by further suits or efforts to appeal regardless of the statute. Phillips Petroleum Co. v. Trigg, Tex.Civ. App., 157 S.W.2d 411, no writ history. Section 30, Vernon's Ann.Texas Probate Code, does not give the parties the right to appear in a County Court case, have a full-fledged trial and contest of every issue that could be raised by a direct appeal to have the privilege of such trial, then take an appeal and through their lack of diligence suffer a dismissal of that appeal, and then come back and appeal by way of certiorari.

We have here the identical parties suing out an application for a writ of certiorari who were proponents and contestees of the will at the trial in the County Court and the same identical parties who were contestants. Other parties were made defendants in the petition for certiorari but they were the attorneys of record for the contestants in the County Court trial, the administrator appointed by the County Judge at the time he announced his judgment and another party who is alleged to have acquired some interest in the property (the pleadings do not allege whether he acquired his interest before the County Court trial or afterwards). So, on a question of lack of jurisdiction of this Court to issue the writ of prohibition, the case of Evans v. Moore, Tex.Civ.App., 109 S.W. 2d 359, no writ history, is in point. In that case the court said:

"This is an application to this court to issue its writ of prohibition against A. M. Moore, as guardian of Vernon White, Jr., a minor, the Honorable Clarence E. McGaw, judge of the 124th district court of Gregg county, and others, to prevent the plaintiffs in a case pending in that court from prosecuting, and the court from hearing and determining, the issues there presented. * * *

"The pending suit in Gregg county is between precisely the same parties (excepting one defendant in the Tarrant county case) and involves the same issues previously tried and determined by the Tarrant county court; when we affirmed that judgment, it became the judgment of this court, and *it cannot be denied that Courts of Civil Appeals have the power, and that it is their duty, to stay any act which interferes with the enforcement of such decrees.* Article 1823 Rev.Civ.Statutes; Houston Oil Co. v. Village Mills Co., 123 Tex. 253, 71 S.W.2d 1087, 1089.

*"The duty of this court to protect its judgments does not require it to wait until some physical act or obstacle is placed as a barrier before those whose duty it is to execute its mandates, but*

*may be exercised when a suit has been instituted in any court which may result in its defeat.* To this effect is Houston Oil Co. v. Village Mills Co., supra, where it was said: 'Where rights are established by a judgment of this (Supreme) court, *the court has undoubted power to secure, by any proper writ necessary to the end, the enjoyment of the rights so established.* Where a suit is brought in an inferior court, by any of the parties or privies to such judgment, against those in favor of whom the judgment was rendered, or their privies, and the suit directly involves the relitigation of rights established by the judgment, and is of such a nature that, if successfully prosecuted, will result in a judgment which will purport the divesting of those rights, the prosecution of such suit will be prohibited as being an interference with the enforcement of the judgment of this court. Conley v. Anderson, Tex.Sup., 164 S.W. 985; Hovey v. Shepherd, 105 Tex. 237, 147 S.W. 224; City of Palestine v. City of Houston, Tex.Civ.App., 262 S.W. 215.' " (Emphasis added.)

And again, in American Law Book Company v. Chester, 110 S.W.2d 950, 951, er. dism., the Court of Civil Appeals at Beaumont, by a Per Curiam opinion, among other things, held:

"Relator is entitled to its writ of prohibition as prayed for. The affirmance of the judgment of the lower court against respondent made that judgment the judgment of this court; and the successful prosecution by respondent of his will of review would have the effect of divesting out of relator the rights granted him by our judgment of affirmance, affirmatively invoking the following proposition announced by this court in Yount-Lee Oil Co. v. Federal Crude Oil Co., Tex. Civ.App., 92 S.W.2d 493, 495: 'The prosecution of the suit for review

would constitute an interference with the enforcement of the judgment of this court, which threatened invasion of its jurisdiction it has power by writ of prohibition or other appropriate writ to restrain.' "

See also Yount-Lee Oil Co. v. Federal Crude Oil Co., Tex.Civ.App., 92 S.W.2d 493, certiorari denied in Federal Crude Oil Co. v. Yount-Lee Oil Co., 299 U.S. 554, 57 S.Ct. 16, 81 L.Ed. 408; State v. Miller, Tex.Civ.App., 183 S.W.2d 278; Snelson v. Drane, Tex.Civ.App., 134 S.W.2d 445, wr. dis.; Texas National Bank v. Zellers, Tex. Civ.App., 75 S.W.2d 890; Halbrook v. Quinn, Tex.Civ.App., 286 S.W. 954, no writ history; and Rogers v. Waters, Tex. Civ.App., 267 S.W.2d 582.

The Rules, statutes and decisions of this state and other states on the question presented here to decide are both conflicting and confusing, and the three opinions in this case will neither resolve the conflicts nor reduce the confusion. The writ of certiorari had its origin in the common law. The fact that there is much confusion in the scope and view of the certiorari is pointed out in 14 C.J.S. Certiorari § 172, p. 311.

Our statute, Sec. 30, Vernon's Ann.Texas Probate Code, in effect, provides for a dual method of appeal, but certiorari provides for an appeal only to revise and correct the record. It has been quoted many times, but is quoted again for the purpose of the discussion here:

"Section 30, Probate Code, Certiorari.

"Any person interested in proceedings in probate may have the proceedings of the county court therein revised and corrected at any time within two years after such proceedings were had, and not afterward. Persons non compos mentis and minors shall have two years after the removal of their respective disabilities within which to apply for such revision and correction. Acts 1955, 54th Leg. p. 88, ch. 55."

Rule 344, V.A.T.R.C.P. provides as follows:

"An application for writ of certiorari to the county court shall be made to the district court, or a judge thereof. It shall state the name and residence of each party adversely interested, and *shall distinctly set forth the error in the proceedings sought to be revised."* (Source: Art. 933, unchanged). (Emphasis added.)

Rule 350, V.A.T.R.C.P. reads as follows:

*"The cause shall be tried de novo* in the district court, but the *issues shall be confined to the grounds of error* specified in the application for the writ. The judgment shall be certified to the county court for observance." (Source: Art. 939, unchanged.) (Emphasis added.)

Now, Sec. 30 of the Probate Code authorizes an appeal by certiorari by any interested person in a probate matter within two years after rendition of judgment or entry of order in such matter to have errors *in the proceedings* (not errors *of judgment)* revised and corrected; and, by persons non compos mentis and minors within two years after the removal of their respective disabilities. Rule 344 requires that the application for the writ shall distinctly set forth the error *in the proceedings* (not errors *of judgment)* sought to be revised. Rule 350 says *the cause shall be tried de novo* in the district court, but the issues shall be confined to the grounds of error specified in the application for the writ. The Supreme Court of Texas in the case of Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681, 692, speaking of **a** trial de novo said:

"The opinion itself clearly defines what is meant by a de novo trial. It even goes to the pains and extent to distinguish such a trial from a trial to merely review a nonpermissible error. Even if the opinion of the Court of Civil Appeals did not clearly disclose what is meant by a de novo trial, the authorities generally have so clearly defined the scope of such a trial in a judicial tribunal as to leave no room for debate as to what is covered thereby. A de novo judicial trial means a trial 'anew; afresh.' Webster's New International Dictionary. A de novo trial means 'anew; afresh; in the same manner; with the same effect; a second time.' 18 C.J. 486; 25 C.J.S. De novo p. 1011. *Power to try a case de novo vests a court with full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court.* Zurich General, etc., Co. v. Rodgers, 128 Tex. 313, 97 S.W.2d 674, 675. *From the above authorities we conclude that a de novo judicial trial means a full civil trial on the facts as well as the law.* It follows that in refusing the writ of error from the first opinion of the Court of Civil Appeals we held that a de novo trial under Article 6059 means a full civil trial on the facts as well as the law, and not merely a trial to correct nonpermissible errors. As to what is meant by a de novo trial we also cite the cases of Schultz & Bro. v. Lempert, 55 Tex. 273, and Ex parte Morales, Tex.Cr.App., 53 S.W. 107." (Emphasis added.)

This renders Rule 350 conflicting within itself because it first says that it shall be tried de novo (afresh, anew, as if the case had been originally filed in the district court) then it says the issues shall be confined to the grounds of error specified in the application for the writ. It is impossible to try the case anew and at the same time limit it to specific issues, as stated in the Rule.

Some Texas cases hold that issues of fact are reviewable by certiorari while others hold to the contrary. In the case of State v. De Silva, 105 Tex. 95, 145 S.W. 330, the court at page 333 under column 1, said:

"The defect of the affidavit, if it was defective, could not confer jurisdiction upon the district judge to issue the certiorari; the proceedings not being judicial in character. Section 8 of article 5 of our Constitution confers upon the district courts authority to issue writs of certiorari, which invests that court with power to use the writ for any purpose to which it could be applied, which is tersely stated thus: *'Certiorari is a writ issued by a superior court to an inferior court of record, requiring the latter to send into the former some proceedings therein pending, or the records of proceedings in some cause already terminated in cases where the procedure is not according to the course of the common law. In such case, however, the officer or tribunal to whom the writ is issued must be an inferior officer or tribunal exercising judicial functions, and the proceedings sought to be reviewed must be judicial proceedings; for it is not the office of a common-law writ of certiorari to review ministerial acts, but only to correct errors of law apparent on admitted or established facts—never to settle disputed points.'* 4 Encyc.Pl. & Pr., pp. 8, 11." (Emphasis added.)

In the case of Schwind v. Goodman, Tex. Com.App., 221 S.W. 579, at pages 580–581, opinion approved by Supreme Court, the court said:

"The writ of certiorari was known to the common law before statutes authorizing and defining its use and application were enacted, and it seems to be well settled that—

" 'Except where so made by statute, the writ of certiorari as used to correct the proceedings of inferior tribunals is not a writ of right, but issues only on special cause shown to the court to which application is made, and the court is vested with judicial discretion to grant or refuse the writ as justice may seem to require.

" 'If the error is manifest and substantial injury has been sustained, the writ should be allowed; *but the court will not award the writ* where the errors complained of are merely informal and technical, or where, *although there is error in fact,* substantial justice has been done, and no appreciable injury has resulted to the complaining party.' 6 Cyc. 748, 749." (Emphasis added.)

It must be borne in mind that the chief complaint here is an alleged error *of fact.* The respondents allege in their petition for certiorari, an error on the part of the County Judge in finding and concluding as a fact that Matilda C. Clayton, deceased, was a person of unsound mind at the time she executed the will. Such finding was certainly within the jurisdiction and discretion of the County Judge. If such was error, it was an error that is not revealed by the record. It was an error *of judgment* and is not evident *in the proceedings* sought to be corrected. If the County Judge had found that Matilda C. Clayton was of sound mind and through mistake denied the will to probate, such denial would have been an error *in the proceedings,* which if not discovered in time to be corrected by the County Court, could have been corrected by certiorari to the District Court.

It was made known to this Court at the time the case was argued that the evidence adduced upon the trial in the County Court (when the will was offered for probate and was contested) was not brought forward to the District Court for review. This presents another confusing question. The statute provides that the proceedings may be "revised" and "corrected" by certiorari. There is no way of telling whether the facts found by the County Judge is error or not. According to Webster's dictionary, "revised" means: "to review; to re-examine; to look over with care for correction; as, to *revise* a writing; to *revise* a proof sheet; alter, and amend; as, to revise statutes." Webster defines "cor-

rect" as: "to make right; to bring to the standard of truth, justice or propriety; as, to correct manners or principles; to amend; etc." As synonyms of the word "correct" the following are listed: "Amend, improve, reform, etc." Thus it seems that the use of the words "revise" and "correct" in the statute means to have any errors *in the proceedings* revised and corrected to reflect the truth, purpose and intent at the time the proceedings were had. Although, our courts have on occasions "reversed" on hearings by certiorari judgments and orders of probate courts, yet the word "reversed" is defined by Webster to mean: "in law, to overthrow by a contrary decision; to make void; to annul; as, to *reverse* a judgment, sentence or decree." This approach to a discussion of the statute and rule here involved has never before been noted, but it seems to be a fair and reasonable approach, especially where the parties have been present and participated in a full-fledged trial and failed to perfect an appeal whereby, unquestionably, the judgment or order of the probate court could be reversed and a different judgment rendered. It seems that the courts have, through the years, failed to note that the method of appeal by certiorari is actually limited to the revision and correction of error *in the proceedings,* not to reverse because of *some difference of opinion on a fact issue* that is not revealed *in the proceedings.*

The chief complaint of respondents in their petition for certiorari is that the court erred in finding and concluding as a fact that Matilda C. Clayton was of unsound mind at the time she executed the purported will. Following this, they alleged that the County Judge erred in denying the will to probate; refusing to admit said will to probate; finding that the person named as independent executor in the purported will was incompetent to serve as temporary administrator of the estate of Matilda C. Clayton and discharging said temporary administrator; overruling certain exceptions urged to the petition to contest the will in the County Court by petitioners here; and, in refusing to dismiss one of the respondents as a defendant in the suit to contest the will in the County Court. These are not allegations of error *"in the proceedings,"* they are mere conclusions of fact that have been decided against them and amount to no more than alleged errors *of judgment.*

As a matter of law, it must be presumed that the County Judge had before him some evidence of probative value upon which he based his judgment. This cannot be overcome by a mere allegation or conclusion on the part of pleaders. Such finding and conclusion of fact, as above stated, was within the jurisdiction and discretion of the County Court. There is no allegation of fraud or abuse of discretion; just an effort to get a new trial on the facts as they were originally presented to the County Court. Neither is there any allegation in the petition for certiorari that the estate of Matilda C. Clayton has been or will be damaged or destroyed. Assuming as a fact, which this Court is bound to do in view of the judgment of the County Court, Matilda C. Clayton was of unsound mind at the time she executed the will, her estate will be preserved, protected and distributed as the law directs in such cases. If she had not the mental capacity to make a will there is no other provision for the descent and distribution of her estate than that which will be followed in the administration of the estate under the judgment of the County Court.

If the judgment of the County Court had been that Matilda C. Clayton was a person of sound mind at the time the will was executed, the County Judge would have had no alternative but to admit the same to probate. In that case, the other errors complained of would not have happened, unless it would have been the removal of the temporary administrator. Be that as it may, they are all fact issues, all of which were incidental to the disposition of the will contest.

From the authorities hereinabove cited, as well as the case next to be discussed, irrespective of the statutes and rules, issues of fact in such cases as existed in the County Court out of which this litigation grew, cannot be reviewed on appeal by certiorari. Especially so where the parties appear, and have a full-blown trial, or, have notice to appear but fail to do so without justification or excuse. The case of Richardson v. Lingo, Tex.Civ.App., 273 S.W.2d 119, wr. ref., n. r. e., is directly in point. This case holds that issues within judicial discretion in the County Court can not be reviewed by the District Court except on direct appeal. With that holding I agree. There being no allegation that the errors complained of were ones of law and judicial in character, the District Court would have no alternative except to sustain the special exceptions of the defendants (petitioners here) and dismiss the case. The allegations of the respondents in their petition for certiorari do not set forth any errors in the orders of the Probate Court, or any errors of law committed by the Probate Court. Very definitely they do not allege the order of the Probate Court to be void, neither do they allege the Probate Court to be without jurisdiction to make and enter the order which they in truth and in fact seek to "reverse," not to "revise and correct." In Richardson v. Lingo, supra, the parties attempted to appeal by way of certiorari (after a direct appeal) to review a judgment of the County Court based upon a finding of fact. In that case, no appeal bond was filed in the direct appeal which was dismissed; they just gave notice of appeal, which they did not have to do. 14–A, Tex.Jur. 132, Sec. 114, and authorities therein cited. On appeal by certiorari, the defendants answered by special exceptions which the District Court sustained and dismissed such appeal. On appeal to the Court of Civil Appeals, the appellants complain of the action of the trial court in dismissing application for writ of certiorari, because: "(1) Such application stated a cause of action reviewable in the District Court by certiorari; (2) the

court's holding that only questions of law could be considered by the District Court was error because an order of the Probate Court allowing the will to be probated is reviewable by certiorari in the District Court; (3) the trial court's action was error for the reason that plaintiffs' petition distinctly did set forth the errors they complain of."

The appellees presented the following counter points:

"(1) The record in the Probate Court revealed that that court did not commit any error in the proceedings had there; (2) that appellants' application for the writ of certiorari set forth the errors in the order of the Probate Court complained of and failed to distinctly set forth any errors which were errors-of-law and judicial in character, or that were beyond the jurisdiction of the Probate Court, or in excess of such jurisdiction; (3) the writ of certiorari so sought by the appellants did not seek to have any proceedings of the Probate Court revised, or corrected, *but such application merely requested the trial court to render appellants a new trial on matters of fact which had been decided in that court against them.*" (Emphasis added.)

After discussing the various statutes and Rules, the court said:

"An examination of the appellants' application for writ of certiorari by this appellee's attorneys fails to reveal an allegation wherein they have alleged that the lower Court committed any error, nor does such application 'distinctly set forth any errors' in the orders of the Probate Court of which appellants complain; *nor does such application distinctly set forth any error of law in the proceedings in the Probate Court or any orders which were beyond the jurisdiction of the Probate Court and which such allegations and such errors must be shown before this*

*Court has jurisdiction to (order) a trial de novo under and by virtue of a writ of certiorari.*

\* \* \* \* \* \*

"A case in which the fact situation closely resembles the facts before the Court in the case at bar is the case of Robertson v. National Spiritualists' Ass'n, Tex.Civ.App., 25 S.W.2d 889, 891 (writ dismissed). In this case the appellant brought suit for breach of contract; the facts were that the appellant, who was an attorney, was discharged after he failed to probate a Will in the County Court. The appellant had a contingent-fee contract which provided that $25,000 would be paid appellant, 'if and when said will should be probated by final judgment or decree in a court of competent jurisdiction'. Judgment was rendered in the County Court denying the Will to probate, and to which action the appellant attorney gave notice of appeal. The Appeal Bond from the County to the District Court was not executed, and the appeal was dismissed for lack of jurisdiction. The appellant in this suit alleged that he was ready, willing and able to secure the final probate of said Will and would have performed such services but for the wrongful act and breach of contract by the appellee. The appellant in his case on appeal urged that he had a right to have the judgment of the County Court revised and corrected by certiorari proceedings notwithstanding that the appeal had been originally dismissed by the District Court. (The) appellate court held that such statutory provisions did not apply to the facts of the case and in so holding stated as follows:

" 'That in order for appellant to have established his right to recover against appellee, it was incumbent upon him to allege and prove facts sufficient to show: (a) That appellee would have been entitled, as against the judgment of the county court refusing to probate said instrument, to the writ of certiorari to have reviewed said judgment—facts from which it would have appeared that such proceedings were void or that some substantial wrong and injustice to the estate of John L. Jackson had been done. \* \* \* This holding is in accord with the following rule of law announced by Chief Justice James in the case of Comstock v. Lomax, Tex.Civ.App., 135 S. W. 185, 186, viz.: "The writ of certiorari to annul proceedings of the county court in probate matters is not a writ of right in the sense that the proceeding will be revised for errors as on appeal. Relief is only granted in such cases when it is made to appear that the proceeding is void, or that some substantial wrong and injustice to the estate has been done." '

" 'After a careful inspection of the statement of facts, we find that appellant failed in both of such requirements.' In the case of Johnson v. Coit, Tex.Civ.App., 48 S.W.2d 397, 400, the Court, in discussing what was the basis of a plaintiff's suit under an application for a writ of certiorari, stated as follows:

" 'As provided by article 933, it was incumbent upon plaintiffs to distinctly set forth in their application for the writ of certiorari the errors in the orders of the county court sought to be revised. *And under the rule of decisions of this state the burden was upon the plaintiffs to further allege that the errors complained of were ones of law and judicial in character,* and not mere irregularities relating to the performance of ministerial acts or such as were done in the exercise of a sound discretion of the court. And the writ applies to an order of court sought to be revised if the same was beyond the jurisdiction of the county court or in excess of such jurisdiction. 9 Tex.Jur. pp. 28–30, and authorities there cited.

" 'We have reached the conclusion that the county court had no jurisdictional authority to make the orders referred to authorizing and approving the deed of conveyance by the executors to Mrs. Cora Shannon, and approving the final account of the executors showing that such a conveyance had been made in accordance with the former order of the court authorizing the same.' And again, in the same case, the Court states the general rule to the effect that the hearing on the writ is confined to the question of whether error was committed by the lower Court, and in so doing stated as follows:

" 'As provided by Article 939, after the writ of certiorari is granted, the case is then tried de novo in the district court; and in 9 Tex.Jur. p. 42, the following is said: "The hearing on the writ is generally confined to the question of whether error was committed by the lower court. The District Court in such proceeding may not correct errors in deeds of guardians or of administrators, nor may it try the title to land; it may review only the errors of the County Court." '

"In the case of Dunaway v. Easter, 133 Tex. 309, 129 S.W.2d 286, 288 (Commission of Appeals, opinion adopted by the Supreme Court), an administrator had qualified and had approved a claim presented to him. The heirs at a later date filed a petition for a writ of certiorari to review the proceedings and which was granted by the District Court. Upon appeal the Commission of Appeals held that the District Court should have dismissed the petition for writ of certiorari, and in so doing stated as follows:

" 'Clearly if the order of the probate court appointing Dunaway administrator was valid then the orders of that court approving the claims were final and not subject to review in the district court, *except upon direct appeal,* and the Court of Civil Appeals erred in affirming the judgment. Jones v. Wynne, Tex.Com.App., 133 Tex. 448, 129 S.W.2d 286. * * *

" '*It is correctly stated in the opinion of the Court of Civil Appeals that the judgment of the district court must be presumed to have been supported by the evidence since no statement of facts was filed.*

" 'It is settled that the district court's jurisdiction over probate proceedings had in the administration of the estate of deceased persons is appellate only. Jones v. Wynne, supra; Id., Tex.Civ. App., 104 S.W.2d 141, 143, 2nd col. par. (1); Pierce v. Foreign Mission Board Tex.Com.App., 235 S.W. 552; Johnson v. Stalcup, Tex.Civ.App., 74 S.W.2d 751; Const. of 1876, art. 5, sec. 16, Vernon's Ann.St.

" 'It therefore follows that the district court erred in taking any action upon the petition for certiorari other than to dismiss it. It appears upon the face of the petition that administration of the estate was in process in the probate court at the time the petition was filed. It does not appear from the allegations of the petition, nor is it claimed by any of the parties, that the adjudication of any of the matters complained of were beyond the powers of the probate court. If there was no error in the order of that court appointing Dunaway administrator, as found by the district court, it became its duty to dismiss the petition and it erred in not so doing.'

"In the case of Clopper v. Hutcheson, 16 Tex.Civ.App. 157, 40 S.W. 604, the Court holds that a decree of the County Court should not be revised by the District Court on certiorari where the proceedings in the County Court were in strict compliance with the statutes and the law where, if there was any error at all, *it was in*

*judicial discretion, and not in law.* The Court, in discussing Article 932 relating to certiorari and Rule 350 as regards a trial de novo, and in discussing the instant case, states as follows:

" 'If there was any error at all, it was in judicial discretion, not in law, for the law was complied with to the letter. There was nothing, therefore, in the proceedings of the court to put any one upon notice of any illegality in the transaction. The ground of revision must and can only be a lack of discretion in the judge in passing upon the facts in regard to the fairness of the price, and the district court was called upon to pass upon it, not in the light of the facts before the county judge, but other, and perhaps totally different, testimony. We do not believe that it was contemplated by the legislature that such a ground for revision of a probate order should be tenable. To sanction such a ground would be to lay every title from an executor, administrator, or guardian open to attack, and that, too, upon a point against which it would be impossible to guard. Compliance with the most minute requirements of the law would be no safeguard against the attack, for it is an error that is not based upon the law, but upon a lack of proper discretion in the county judge. The attack may come many years after the sale was made, when the evidence before the county judge is inaccessible or unknown; and a revision of his official discretion would take place, and upon a different state of facts it might be held that he was wrong in ruling that the price for the land was a fair one, and therefore titles would be unsettled, and confusion reign. To thus remedy a supposed wrong to an individual would be to unsettle the titles of thousands. Those titles may have passed through many mutations, as in this case, and may have been held unsuspectingly for many years; the parties having no notice of errors in the probate proceedings, and no way of ascertaining them. *Public policy would, in the absence of fraud or any error of law, preclude a revision of the order of the county judge upon a question of discretion alone.* Not only would the holders of titles from the estates of decedents suffer from permitting a revision of matters that must, in the very nature of things, be confided to the judicial discretion of some one, but great loss would be entailed upon such estates, the practical effect of such power of revision being to prohibit the sale of such estates. No one would be found with sufficient temerity to purchase property that carried with it not only the possible, but probable, means of destruction of its title, against which business foresight and prudence could make no provision.' "

Respondents challenge the right of the petitioners to the writ of prohibition by this Court because they have other remedies, such as exceptions, plea in abatement, etc., in the District Court. A careful study of the authorities cited near the beginning of this opinion will support the theory that it would be unjust to require the petitioners to suffer the delay in the administration of the estate, as well as the long, tedious and arduous task of trial and appeal, as well as the unnecessary expense to defend the petition in the District Court and then appeal to this Court and the Supreme Court. In such cases, equity should grant the relief prayed for. The very purpose for which the writ of prohibition is resorted to most frequently is to prevent an inferior court from entertaining suits or proceedings which have for their purpose the re-litigation of controversies already settled by decisions of superior courts. Lowe and Archer, Texas Practice, Extraordinary Proceedings, p. 485, Sec. 512, and authorities therein cited.

A careful study of the opinions in this case will readily reveal that each member of this Court recognizes the conflicts of decisions on the question of appeal by certiorari. The holding of the majority in this case is very definitely in conflict with the following cases: State v. De Silva, supra; Schwind v. Goodman, supra; Richardson v. Lingo, supra; and Robertson v. National Spiritualists' Ass'n, supra.

In Jirou v. Jirou, 104 Tex. 136, 135 S.W. 114, in the petition for certiorari, certain allegations of errors *in the proceedings* were made, to-wit: that the judgment of the County Court was void because of the relationship of the County Judge to one of the respondents; and, errors of description in the property. Such errors are errors *in the proceedings,* not errors *of judgment based upon findings of fact.*

The respondents here are in no position to complain of not having a trial by jury. They instituted the original proceeding in the County Court to probate the will. They participated in the trial. They perfected their appeal, but failed to follow it up.

There is no semblance of resemblance to our mode of probating wills in common form in other jurisdictions. The probate of a will in common form is when the will is probated without any notice of any kind to anybody. We follow the solemn form of probating wills in other jurisdictions which require notice to all interested parties. Our statutes require notice by posting. Persons interested in the estates of deceased persons are required by law to be on the lookout for such notices.

The case of Zamora v. Garza, Tex.Civ. App., 117 S.W.2d 165, is not in point. No appeal bond was filed in the case. No two cases could be no more in conflict than Zamora v. Garza, supra, and Richardson v. Lingo, supra.

If the law is as contended by the majority in their opinions, it is going to cloud more titles to real estate in the State of Texas than anything that has ever happened before; and, will, no doubt, invite a tremendous amount of litigation involving titles to properties that have been sold through probate and administration proceedings.

No right of appeal by certiorari exists even though a direct appeal is dismissed because of failure to file an appeal bond on direct appeal. 9 Tex.Jur. 23, Sec. 4; Richardson v. Lingo, supra. Where an appeal bond is filed and abandoned, no right of appeal by certiorari exists. Robertson v. National Spiritualists' Ass'n of United States of America, Tex.Civ.App., 25 S.W.2d 889, er. dism. The last cited case also holds that a judgment of the Court of Civil Appeals dismissing an appeal from the Probate Court for failure to file an appeal bond makes a judgment of the Probate Court refusing a will to probate also the judgment of the Court of Civil Appeals.

The writ of prohibition should be granted as prayed for.