**CITY OF LUFKIN, Appellant,**

v.

**B. H. McVICKER, M.D., Appellee.**

No. 7489.

Court of Civil Appeals of Texas, Beaumont.

July 19, 1973.

Dissenting Opinion on Motion for Rehearing Aug. 30, 1973.

Second Rehearing Denied Sept. 27, 1973.

---

Robert L. Flournoy, City Atty., Lufkin, for appellant.

Parker McVicker, Lufkin, for appellee.

KEITH, Justice.

City appeals from a judgment which denied a mandatory injunction which would have required the abatement of an alleged violation of its zoning ordinance, and we will designate the parties as they appeared in the trial court.

The defendant constructed what started out to be a fence upon his residential property line, but the improvement was soon converted into a carport. No building permit was issued for the construction of the fence since it alone would not have constituted a violation of the zoning ordinance. But, the parties are in accord that the structure, as completed, was in fact violative of the side yard restrictions contained in the ordinance. Having been notified of this alleged violation, defendant then sought a variance from the Board of Adjustment.

The Board of Adjustment consisted of only five members and it was provided that "the concurring vote of four (4) members of the Board shall be necessary . . . to affect [sic] any variances in said ordinance."

The defendant was a member of the Board of Adjustment and, at a meeting held on April 16, 1970, attended by all five members, the minutes reflect that a motion was made that the "Board grant a variance [to defendant] because he was misled by the City. Seconded by Mr. Smith and all three voted yes." The chairman's vote was not shown in the minutes and the defendant was not present at the time the vote was taken.

Upon the following day defendant was notified by the Building Inspector, who had initiated the complaint, that the variance had been granted by the Board of Adjustment but our record is silent as to any action taken by defendant in reliance thereon.

City took no action to escape or avoid the effect of the grant of the variance until July 7, 1970, when it filed an action for a declaratory judgment in the District Court of Angelina County. All relief was denied to City and it appealed to this Court where, in an unpublished opinion, we reversed the judgment and remanded the cause to the trial court with instructions to dismiss the cause. No rehearing was sought in this Court.

On November 11, 1971, nearly nineteen months after the granting of the variance, City initiated the suit which we now review, seeking to abate the nonconforming use to which defendant's property was then being put. The trial court, reviewing the statement of facts in the earlier case, denied all relief sought by City and it now appeals. Extensive findings of fact and conclusions of law, all favorable to defendant, were entered by the trial court.

City's four points of error are brought into focus by this statement which we take from its brief:

> "Whether a variance was granted is really the only question that needs to be decided. If a variance was not granted, the City did not need to appeal as the decision was in its favor. If, on the other hand, the variance was granted, the City admits that it did not appeal the decision within ten days [as required by the ordinance] or at any time thereafter and admits that they could not now appeal it."

■ Without objection, the trial court heard evidence from the chairman of the Board of Adjustment that she did not understand that she could vote except in case of a tie and that she had never voted upon a variance; that, although she was opposed to the granting of the variance in this instance, she did not cast her vote for or against the granting thereof. Likewise, without objection, the defendant showed that the Board had granted many variances with the concurrence of only three members, with the chairman abstaining, in the several years before this controversy arose.

We are of the opinion that this evidence was incompetent and improperly received. It has been held that such boards of adjustment are quasi-judicial and that their orders are immune from collateral attack. Washington v. City of Dallas, 159 S.W.2d 579, 581 (Tex.Civ.App., Dallas, 1942, no writ); City of Dallas v. Halbert, 246 S.W.2d 686, 691 (Tex.Civ.App., Dallas, 1952, error ref. n. r. e.); 8A McQuillin, Municipal Corporations § 25.304, p. 371 (1965 Rev.Vol.).

In this sense, the Board of Adjustment is like unto a commissioners court which "speaks through its minutes, and not by the mouths of the members of the body." Gano v. County of Palo Pinto, 71 Tex. 99, 102, 8 S.W. 634, 635 (1888). The Board can act only as a body speaking through its minutes. Hill Farm, Inc. v. Hill County, 425 S.W.2d 414, 418 [Tex.Civ.App., Waco, 1968, affirmed 436 S.W.2d 320 (Tex.1969)]. See also, Canales v. Laughlin, 147 Tex. 169, 214 S.W.2d 451, 455 (1948).

City's attack upon the grant of the variance in this case was in the nature of a collateral attack upon the order of the Board of Adjustment. In Akers v. Simpson, 445 S.W.2d 957, 959 (Tex.1969), it was said: "A collateral attack on a judgment is an attempt to avoid its binding force in a proceeding not instituted for such purpose." See also, Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325, 327 (1895).

As was said in Southern Surety Co. v. Texas Oil Clearing House, 281 S.W. 1045, 1046 (Tex.Comm.App.1926, jgmt. adopted):

"Strictly speaking, a void judgment is one which has no legal force or effect whatever. It is an absolute nullity and such invalidity may be asserted by any person whose rights are affected, at any time and at any place. It need not be attacked directly, but may be attacked collaterally whenever and wherever it is interposed. Usually it carries the evidence of its invalidity upon its face, while a voidable judgment is one apparently valid, but in truth wanting in some material respect; in other words, one that is erroneous. Such vice may be the want of jurisdiction over the person or other similar fundamental deficiency, but which vice does not affirmatively appear upon the face of the judgment."

The quasi-judicial power exercised by the Board of Adjustment was by virtue of the ordinance under which it operated; and a judgment in excess thereof is null and void and subject to collateral attack. Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633, 638, 66 A.L.R. 916 (1928). Or, as was said in Freeman v. Freeman, 160 Tex. 148, 154, 327 S.W.2d 428, 433 (1959): "Judgments are void for lack of power in courts to render them when they are rendered contrary to constitutional or valid statutory prohibition or *outside limiting constitutional or statutory authority*." (emphasis added)

The face of the judgment—the minutes of the Board which we review—disclosed that only three members of the Board concurred in the granting of the variance; and it is equally clear that the only authority which the Board of Adjustment possessed to grant a variance was with the concurrence of four of its members. Thus, the very order upon which defendant relied upon carried "the evidence of its invalidity upon its face." Southern Surety Co., supra.

We put to one side the protestations of the chairman that she was opposed to the granting of the variance. The time and place for her to express her opposition was in the meeting of the Board—not in the courtroom. Gano v. Palo Pinto, supra. But, in order to procure relief, to secure the variance from the zoning ordinance itself, defendant labored under the burden of proving by the minutes that the variance was granted by the concurrence of four members of the Board. The official record shows that this did not occur for it is

clear that only three—and not four—members concurred in the granting of the variance.*

Since the official record showed affirmatively that the Board did not comply with its statutory authority in purporting to grant the variance, the order was void and a nullity which could be attacked at any time and place, either directly or collaterally. *Southern Surety Co.,* supra.

This holding brings us to a consideration of the defense of estoppel urged by the defendant. In essence, he contends that the city officials had adopted a "departmental construction" of the ordinance which required only three concurring votes in the granting of a variance and had followed this policy for several years. Proof of such practice was made and it is clear that in the granting of the variance to the defendant in this instance, the Board followed the usual routine it had followed in similar cases in the past.

The plea of estoppel is no bar to the relief sought by City. In the first place, defendant fails to meet *any* of the tests therefor laid down in Gulbenkian v. Penn, 151 Tex. 412, 418, 252 S.W.2d 929, 932 (1952), [quoting from 31 C.J.S. Estoppel § 67, p. 254]:

"'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.'"

Defendant failed to establish a single one of these requirements. He was charged with knowledge of the requirement in the ordinance that his variance could be granted only upon the concurrence of four members of the Board; and he knew from the minutes that only three actually concurred. Insofar as shown by our record, he had already completed his carport before the variance was granted—in any event, he has wholly failed to show any reliance upon the word of the Building Inspector that a variance had been granted.

It seems clear that the Board members, possibly including the defendant, had been acting under a mistaken impression as to the terms of the ordinance, but this did not create a right when none existed.

It is apparent that the ordinance has not been enforced uniformly in the past as the City now seeks to enforce it against the defendant. But, as was said by Justice Pope in Hill v. Board of Adjustment of City of Castle Hills, 301 S.W.2d 490, 491 (Tex.Civ.App., San Antonio, 1957, error ref.): "[T]he fact that a zoning regulation has not been enforced does not work its repeal."

Zoning ordinances are not rendered invalid or inoperative for failure of enforcement or because of the acts of city officials; nor is the city estopped to enforce it because of the failure to enforce it on other occasions. Westworth Village v. Mitchell, 414 S.W.2d 59, 60–61 (Tex. Civ.App., Fort Worth, 1967, error ref. n. r. e.), and cases therein cited.

Defendant's reliance upon the so-called "departmental construction" of the ordinance must also fail. The ordinance, in clear and unambiguous language required the concurring vote of four members of the Board. As was said in Fire Ass'n of Philadelphia v. Love, 101 Tex. 376, 108 S.W. 810 (1908): "[W]hen the language to be construed is plain and un-

* We have been cited to the opinion of Downing v. Gaynor, 47 Misc.2d 535, 537, 262 N.Y.S. 2d 837, 840 (Sup.Ct., N.Y., 1965), holding:

"An abstention is a vote which should be counted in opposition to a resolution."

ambiguous, as is that before us, executive construction is entitled to little consideration."

We are of the opinion that City is entitled to relief from the violation of the zoning ordinance; but, under the unsatisfactory record which we review, we are unwilling to render judgment granting the entire relief sought. The agreed statement of facts includes this question propounded to the City Building Inspector and his answer thereto:

Q. "Would the carport be in violation of the side yard provision of Zoning Ordinance if the roof was removed?"

A. "No, because in my opinion it would be a fence and no set back is required for a fence."

It is obvious that we are not in position to fashion the specific relief to which the City is entitled, considering the rights of the parties hereto. Consequently, in the interest of justice, we reverse the judgment of the trial court and remand the cause for the entry of an order enforcing the zoning ordinance against the defendant under such conditions as may seem right and proper under the facts as developed upon a subsequent hearing.

Reversed and remanded with instructions.

## ON MOTION FOR REHEARING

DIES, Chief Justice (dissenting).

I respectfully dissent. City's brief declares:

"The Board of Adjustment and Appeals has operated in the past under the mistaken assumption that a simple majority was all that was required to grant a variance."

So, the practical effect of the majority opinion is to hold void all such previously granted variances. Just how many there are, we do not know; but just a little

imagination can lead one to foresee what chaos in the City of Lufkin could result from this holding.

The majority opinion states:

"But, in order to procure relief, to secure the variance from the zoning ordinance itself, defendant labored under the burden of proving by the minutes that the variance was granted by the concurrence of four members of the Board."

I feel that a fair interpretation of the minutes reflects that a variance was granted.

The trial court found:

"6. That on motion made by member Anderson and seconded by member Smith, a variance was granted to Appellee, McVicker, on April 16, 1970.

\*   \*   \*   \*   \*   \*

"9. That chairman Mrs. W. A. Mitchell concurred in the decision of the board by her failure to vote yes or no."

I see no reason to disregard these findings. Citations concerning abstentions given by City and noted in the majority opinion are not in point because Mrs. Mitchell's failure to record a vote and a positive abstention are two different things.

Since a variance was granted, the majority opinion has misplaced the burden of proof. It devolved on City under the substantial evidence rule. Swain v. Board of Adjustment of City of Univ. Park, 433 S.W.2d 727 (Tex.Civ.App., Dallas, 1968, error ref. n. r. e.) and Zoning Board of Adjustment v. Marshall, 387 S.W.2d 714 (Tex.Civ.App., San Antonio, 1965, error ref. n. r. e.).

The majority opinion treats the Board's decision as a judgment. I do not believe the Legislature ever intended to clothe it with such powers. Otherwise, an irregularity creating a "void judgment" of the Board could be complained of years later by any person or entity enumerated in Art. 1011g, § (j), Vernon's Ann.Civ.St.

It is from this statute that this Board derives its authority. The statute requires appeals to be taken "within a reasonable time." Art. 1011g, § (d), V.A.C.S. The city ordinance involved requires that "[s]uch appeals shall be taken within fifteen (15) days' time after the decision has been rendered by the administrative office." It is not reasonable here to permit City to file this suit and in effect appeal the Board's action some nineteen months later.

Even assuming the Board did not grant a variance, it has not refused one either, so the matter at least for the present, rests where it has been since the appeal—before the Board. "An appeal stays all proceedings in furtherance of the action appealed from. . . ." Art. 1011g, § (e), V.A.C.S.