RECEIVED IN
The ⸱⸱⸱ ᵣₜ oᶠ Appeals
Sixth District

JAN 0 2 2015

Texarkana, Texas
Debra Autrey, Clerk

# ORIGINAL

## NO. 06-14-00047-CV

FILED IN
The Court of Appeals
Sixth District

JAN 0 2 2015

Texarkana, Texas
Debra Autrey, Clerk

**IN THE COURT OF APPEALS FOR
THE SIXTH COURT OF APPEALS DISTRICT
TEXARKANA, TEXAS**

**CAROL PASELK,**

**Appellant**

**v.**

**JUSTICE OF THE PEACE, PRECINCT 1, YVONNE KING**

**Appellee**

# APPELLANT'S REPLY BRIEF

**On Appeal from the Hopkins County Court
Trial Court Cause No. CV14-08223**

**Oral Argument Requested**

Carol Paselk
Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210

NO. 06-14-00047-CV

IN THE COURT OF APPEALS FOR
THE SIXTH COURT OF APPEALS DISTRICT
TEXARKANA, TEXAS

CAROL PASELK,

Appellant

v.

JUSTICE OF THE PEACE, PRECINCT 1, YVONNE KING

Appellee

# APPELLANT'S REPLY BRIEF

On Appeal from the Hopkins County Court
Trial Court Cause No. CV14-08223

Oral Argument Requested

Carol Paselk
Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210

## Identity of Parties and Counsel

Pursuant to Rule of Appellate Procedure 38.1(a), Appellant provides the following list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel.

Carol Paselk                                    Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210


Yvonne King                                     Justice of The Peace, Precinct 1
128 Jefferson Street, Suite
Sulphur Springs, Texas 75482
(903) 438-4026


Dustana Rabe                                    Hopkins County Attorney
128 Jefferson Street, Suite                     Prosecutor in the justice of the peace court
Sulphur Springs, Texas
(903) 438-4017

# Table of Contents

Identity of Parties and Counsel .................................................................. 2

Table of Contents ...................................................................................... 3

Table of Authorities ................................................................................... 5

Statement of the Case ................................................................................ 7

Statement of Facts ..................................................................................... 8

Introduction .............................................................................................. 8

Appellant's Reply To Appellees Response To Appellant's Issue No. 1        10

    The County Court erred in denying Appellant's Petition For Writ of
    Certiorari seeking relief from the "Order Awarding Possession of Seized
    Horses" issued by the Justice of The Peace Court

Appellant's Reply To Appellees Response To Appellant's Issue No. 2        15

    The County Court erred in denying Appellant's Motion To Vacate Void
    Order Issued By Justice Court, Precinct 1,  seeking relief from the "Order
    Awarding Possession of Seized Horses" issued by the Justice of The Peace
    Court.

Appellant's Reply To Appellees Response To Appellant's Issue No. 3        22

    The Justice Court erred in issuing the "Order Awarding Possession of
    Seized Horses", denying Appellant her Constitutionally protected and
    guaranteed rights of lawful due process under the law, a trial by jury of any
    matter affecting her property rights, and protection from excessive fines.

Appellant's Reply To Appellees Response To Appellant's Issue No. 4        32

    The justice Court erred in issuing the "Order Awarding possession of
    Seized Horses" in violation of 8th Amendment Protections.

Conclusion ............................................................................................... 35

Prayer ...................................................................................................... 37

Certificate of Compliance ......................................................................... 38

Certificate of Service ................................................................................ 38

EXHIBITS:

    EXHIBIT No. 1 – Photos of Hay & Grain in the barn – 5/3/09 thru 5/9/09    39

    EXHIBIT No. 2 – Photos of Mares in Pasture 1 month before Seizure .......    44

EXHIBIT No. 3 – Testimony of State's Witness Melanie DeAeth .............. 45

EXHIBIT No. 4 – Testimony of Chief Deputy Ricky Morgan ................... 46

# TABLE OF AUTHORITIES

## Texas Cases

*Arrington v. Arrington , 613 SW 2d 565 (1981)*

*Clayton v. Clayton*, 308 S.W.2d 557, 564 (Tex.Civ.App.—Texarkana 1957, no writ)

City of Lufkin V. McVicker. 510 S.W.2d 141 (1973)

*Dews v. Floyd*, 413 S.W.2d 800 (Tex.Civ.App. Tyler 1967)

*Gracia v. State* – Tex.Ct.App.2012, *See especially*: footnote No. 1

*Granger v. Folk*, 931 S.W.2d 390 (1996)

*Jones v. Jones* , 592 S.W.2d 19 (Tex.Civ.App.— Beaumont 1979, no writ);

*Missouri-Kansas-Texas R. Co. v. Roegelein Pro. Co.*, 260 SW 2d 605 (1953)

*Pine v. State,* 921 S.W.2d 866 (1966);

*Rayson v. Johns*, 524 S.W.2d 380 (Tex.Civ.App.— Texarkana 1975, writ ref'd n.r.e.);

*Silver v. Shefman,* 287 S.W.2d 316 (Tex.Civ.App.— Austin 1956, writ ref'd n.r.e.).

*Stone v. State,* 794 S.W.2d 868, 870 (Tex.App.—El Paso 1990, no pet.)

*Young v. Blain,* 245 S.W. 65 (Tex. Comm'n App.1922, opinion adopted)

## Federal Cases:

*Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 41 S.Ct. 116 (1920)

## U.S. Constitution

4th Amendment, United States Constitution

6th Amendment, United States Constitution

7th Amendment, United States Constitution

8th Amendment, United States Constitution

## Texas Constitution

Article 1, Section 9, Texas Constitution

Article 1, Section 15, Texas Constitution

Article 5, Section 10, Texas Constitution

## Texas Statutes

Texas Code of Criminal Procedure 2.09

Texas Code of Crimninal Procedure, Chapter 18

Texas Code of Criminal Procedure, 18.01(c)

Texas Code of Criminal Procedure 18.10

Texas Code of Criminal Procedure 18.11

Texas Health & Safety Code, 821

Texas Health & Safety Code 821.021 et. seq.

Texas Health & Safety Code 821.022;

Texas Health & Safety Code 821.023(g)

## Rules

Texas Rules of Civil Procedure, Rule 579

## Other Reference

*Atlantic Coast Line R. Co. v. Mack*, 64 So. 2d 304 (Fla. S.Ct. 1952)

*Palmer v. Johnson*, 97 Fla. 479, 121 Wo. 466 (1929)

## STATEMENT OF THE CASE

Appellant Carol Paselk appeals from an order denying her Petition For Writ Certiorari (C.R. pgs. 5-60) seeking relief from a wrongful "Order Awarding Possession of Seized Horses" issued by Hopkins County Justice of The Peace, Precinct 1, Yvonne King. (C.R. pg.55) in violation of Appellant's lawful protections under Texas Health & Safety Code 821.023(g) and in violation of her Constitutionally protected and guaranteed rights to lawful due process of law, the right to a trial by jury of any matter affecting her property rights, and her right to be free from excessive fines and cruel and unusual punishment. Appellant Paselk is also seeking relief from the denial of her

Motion To Vacate Void Order Issued By Justice Court, Precinct 1 (C.R. pg. 111). The "Order" was issued in violation of Appellant's lawful protections under Texas Health & Safety Code 821.023(g), and in violation of her Constitutionally protected and guaranteed rights, including the right to lawful due process.

## STATEMENT OF FACTS

On February 19, 2014, Appellant Paselk filed her Petition For Writ of Certiorari with the Hopkins County Court, seeking relief from the "Order Awarding Possession of Seized Horses" issued by Justice of The Peace, Precinct 1, Yvonne King on May 20, 2009. (C.R. pgs. 5-60). The "Order" was issued in denial of Apellant's right to a trial by jury of any matter affecting her property rights. The "Order" includes horses in good condition in direct violation of Texas Health & Safety Code 821.023(g), upheld by the Texas Court of Appeal in *Gracia v. State* 2012. The "Order" is already legally null and void and Justice demands that the "Order" be vacated.

## INTRODUCTION

This case is about the fulfillment of the Constitutional promise of Justice and NOT about how manipulation of the law and false statements can be used to justify denying this Appellant her lawful protections, and her Constitutionally protected and

guaranteed rights. Although this case comes to this Court as the result of an appeal for a Petition For Certiorari, the underlying null and void "Order Awarding Possession of Seized Horses" (the "Order") is the real issue in this case.

This Court must not be led away from the real and true issue of this entire case which is whether the "Order" issued by layman non-lawyer Justice of The Peace Yvonne King is lawfully null and void, with no effect, and invalid. The glaring issue goes beyond whether a Petition For Certiorari was or was not timely filed. The issue begging Justice is whether this "Order" was issued in violation of this Appellant's protections under the law, and in violation of her Constitutionally protected rights to lawful due process, the right to a trial by jury of all matters affecting her property rights, and her protections from excessive fines and cruel and unusual punishment. Appellant Paselk humbly asks this honorable Court NOT to be confused or side tracked, or to lose focus that the "Order Awarding Possession of Seized Horses" (hereinafter the "Order") issued by the Justice of The Peace Court is the foundational, and ONLY true issue before this Court.

This 6th District Court of Appeals has NEVER previously heard or considered any "Appeal" of this "Order" issued by J.P. Yvonne King. Dustanna Rabe, attorney for Appellee, attempts to seriously confuse this Court by trying to get this Court to wrongfully believe an August 9, 2010 judgment was an appeal of this "Order". The August 2010 Judgment Rabe refers to was NOT based on an appeal of this "Order"

which is the present subject and issue before this Court.

Dustanna Rabe further attempts to confuse this Court by falsely stating in her "Conclusion", "In fact, the Honorable Court of Appeals for the Sixth Appellate District has already visited some if not all of the issues raised in the current appeal in Appellant's previous appeal filed in 2010." Appellant Paselk has not previously brought an appeal of this "Order" to this Court. This Court has NOT previously visited the issues raised in this appeal.

## APPELLANT'S REPLY TO APPELLE'S RESPONSE TO APPELLANT'S ISSUE NO. 1

### Appellant's Contention

The County Court erred in denying Appellant's Petition For Writ of Certiorari seeking relief from the "Order Awarding Possession of Seized Horses" issued by the Justice of The Peace Court.

### Appellee's Reply

The County Court did not err in denying Appellant's Petition for Writ of Certiorari seeking relief from the "Order" issued by Judge Yvonne King.

## Appellant's Reply Argument:

Although this Appellant's Petition For Writ of Certiorari was filed after the TRCP Rule 579 deadline of 90 days, the County Court failed to consider the fact that the "Order" includes horses in good condition, in complete violation of Texas Health & Safety Code 821.023(g), making the "Order" null and void, without effect and invalid.

Regarding TRCP Rule 579, County Attorney Dustanna Rabe states in her Response to Appellant Paselk's Brief, "such a writ shall not be granted after ninety days from the time the final judgment is signed... Judge Newsom properly denied the "Petition" as being untimely filed." According to TRCP Rule 578 Appellant has previously shown, and now shows in this Reply that the justice court did not have jurisdiction to issue the "Order" and that an injustice has been done to Appellant, and that the injustice was not cause by Appellant's own inexcusable neglect."

The responsibility and duty of any Texas court is to ultimately defend and uphold both the Constitution of the United States and the Constitution of Texas. In fulfilling these duties and responsibilities, defending and upholding these Constitutions means to protect the citizens from infringement of their Constitutionally protected and guaranteed rights. The Florida Supreme Court has clearly established the responsibility of Courts, and the proper emphasis and character for upholding Constitutionally protected and guaranteed rights. When presented with a Petition For Writ of Certiorari more than 2 years after the deadline, the Florida State Supreme Court stated,

"We are, therefore, confronted with the dilemma as to whether we will adhere strictly to the Rule and deny jurisdiction to the petitioner on the merits, or whether we will waive the Rule and exercise our constitutional responsibility to take jurisdiction of the case. Where a rule which is not jurisdictional, but directory only, conflicts with the justice of the case, it is justice and not the rule which must prevail. Rules should implement rather than prevent the administration of justice." *Atlantic Coast Line R. Co. v. Mack*, 64 So. 2d 304 (Fla. S.Ct. 1952).

TRCP Rule 579 is ONLY a procedural directive and is not jurisdictional, therefore the County Court had a responsibility to exercise it's constitutional responsibility to take jurisdiction of this case, to afford this Appellant the justice this case demands. The failure of the County Court has brought this case before this Court which must now exercise its duty and responsibility to protect this Appellant's protections under law, and her Constitutionally protected and guaranteed rights.

The Florida Supreme Court further established the proper emphasis and character for upholding Constitutionally protected and guaranteed rights by stating: "It has also been held that if the inferior tribunal had no jurisdiction, the superior court may entertain a petition for certiorari and quash the judgment, in spite of the fact that the petition was not filed within the statutory period." *Palmer v. Johnson*, 97 Fla. 479, 121 Wo. 466 (1929); cited in *Atlantic Coast Line R. Co. v. Mack*, 64 So. 2d 304 (Fla. S.Ct. 1952).

The Justice of the Peace court is a low level inferior tribunal in the State judicial scheme. According to Texas Health & Safety Code § 821.023(g) and the decision of the 14th Court of Appeals in *Gracia v. State*, Tex: Court of Appeals, 14th Dist. 2012 footnote No. 1, Justice of the Peace Yvonne King had NO jurisdiction to include horses in good condition as part of the "Order." THSC § 821.023(g) states:

"The court **SHALL** order the animal returned to the owner if the court does not find that the animal's owner has cruelly treated the animal." [*bold, underline, and caps emphasis added.*]  The language of THSC § 821.023(g) is clearly upheld by the Court of Appeals in *Gracia v. State,* Tex: Court of Appeals, 14th Dist. 2012 footnote No. 1: "*The jury did not find cruel treatment of a German Shepherd dog and some chickens, and those animals were ordered returned to appellants*. See former Tex. Health & Safety Code § 821.023(g) (eff. Sept. 1, 2007 to Aug. 31, 2011), which is identical to the current version."

In *Gracia v. State,* Tex: Court of Appeals, 14th Dist. 2012, the Texas Court of Appeals clearly shows that the justice court MUST abide by the language of the law and consider each and every INDIVIDUAL animal before ANY individual animal is ordered taken from an owner.  Appellee Yvonne King had a lawful duty and responsibility to adhere to and abide by the very clear language of the law, as well as the statutory protections, conditions and limitations intentionally codified by the Legislature.  King

had the responsibility, under law, to consider each and every individual animal according to § 821.022 AND § 821.023(g). The "Order" is null and void, because it violates THSC 821.023(g) by including horses which were in good condition in a "blanket order" for an entire herd of horses. The holding of the Texas Court of Appeals in *Gracia v. State*, clearly shows there is no lawful justification for ordering horses in good condition to be taken from this Appellant. (*See* APPENDX "E" and APPENDIX "F" of the "Petition For Writ Of Certiorari" - C.R. pg. 51-54)

There is NO statutory limitation which can deny remedy from a null and void "Order", according to the Supreme Court of the United States, *"A void judgment, order or decree may be attacked at any time or in any court, either directly or collaterally - The law is well-settled that a void order or judgment is void even before reversal."* *Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 41 S.Ct. 116 (1920). The Texas Court of Appeals has also held that: *"Void judgment is one which has no legal force or effect whatever, it is an absolute nullity, its invalidity may be asserted by any person whose rights are affected at any time and at any place and it need not be attacked directly but may be attacked collaterally whenever and wherever it is interposed."* *City of Lufkin v. McVicker*, 510 S.W. 2d 141 (Tex. Civ. App. - Beaumont 1973).

The County Court has a constitutional responsibility to uphold and protect this Appellant's lawful protections under THSC 821.023(g), as well as to uphold and protect

this Appellant's Constitutionally protected and guaranteed rights.   By denying Appellant

Paselk's Petition For Writ of Certiorari, the County Court erred in adhering to a Rule

which is not jurisdictional, rather than exercising it's duty and responsibility to

implement the administration of justice.  According to THSC 821.023(g) the County

Court has a duty and responsibility to overrule and quash the justice court "Order"

because it includes horses in good condition which the justice court had the

responsibility to order returned to Appellant.(C.R. pgs. 51-54)

## APPELLANT'S REPLY TO APPELLE'S RESPONSE TO APPELLANT'S ISSUE NO. 2

### Appellant's Contention

The County Court erred in denying Appellant's Motion To Vacate Void Order

Issued By Justice Court, Precinct 1,   seeking relief from the "Order Awarding

Possession of Seized Horses" issued by the Justice of The Peace Court.

### Appellee's Reply

The County Court did not err in denying Appellant's  Motion To Vacate the Order

seeking relief from the "Order Awarding Possession Of Seized Horses"" issued by

Justice of The Peace Yvonne King.

## Appellant's Reply Argument:

Appellant Paselk's Motion To Vacate the Order has substantial merit under the law. The "Order" is already null and void because it includes horses in good condition in complete violation of 821.023(g) therefore it is void and invalid with no effect.

Three things substantiate Appellant's claim that the "Order" includes horses that were in good condition, in violation of THSC 821.023(g), making the "Order" already null and void:

1. In his official eyewitness report, filed May 1, 2009, nine days before the seizure, Sgt. Tanner Crump states: "Not all of the horses were poor and she has a rotation plan for the horses on the grazing land she owns. Most of the horses that were poor were older horses and it is expected that they would not look as good as horses that were younger." Crump further stated, "I do not feel that the horses are in need of immediate care or removal from the owner."(C.R. pg. 44)

2. Photos of horses found six days AFTER they were taken from Appellant's property show horses in good condition which, according to THSC 821.023(g) should never have been included in the "Order". (C.R. pgs. 51-54)

3. Photos of Hay and grain usage for ten days BEFORE the seizure clearly shows Appellant was providing feed to the horses. (See EXHIBIT No. 1)

4. States witness Melanie DeAeth, who instigated the "raid" against this Appellant

---

and eventually ended up taking all the horses, as the beneficiary of the "Order", testified in the County-Court-At-Law: "Yes, right. There were some that were okay. There was one pasture that probably had enough grass and was maintaining those horses." (R.R. State v. Paselk, CR0926723, 10/27/09, Vol. 3 of 6, pg. 62, lines 12-14.) Thirty eight mares were in pasture. (See EXHIBIT No. 2 & 3)

5. When asked IF he would have a different opinion IF he had been told that Appellant Paselk was feeding the horses, Chief Deputy Rickey Morgan testified: "I would have. She would probably still have the horses today because she was attempting to feed them." (R.R., State v. Paselk, CR0926723, 10/27/09 Vol. 3 of 6, pg. 285 lines 16 – 25) (EXHIBIT No. 4)

These five items clearly show that there were horses in good condition included in the "Order" making the "Order" already null and void as it is written, because at the very least it violates the protections codified by the Legislature in THSC 821.023(g).

In her Response to Appellant's Brief, Dustanna Rabe, makes sweeping claims there is no authority to support the "Motion To Vacate the Void Order Issued By Justice Court, Precinct 1", however, the "Order" is issued in direct violation of Texas Health & Safety Code, 821.023(g). The "Order" includes horses in good condition in violation of 821.023(g), making the entire "Order" void.

The Texas Legislature has intentionally codified "the animal" or "an animal" throughout the Texas Health & Safety Code, Section 821. This intentional "single

animal" limitation is an intentional protection and safeguard for livestock owners, to restrict the reach of the court over the personal property of livestock owners. The Texas Court of Appeals made special point to clarify this protection and safeguard for livestock owners in *Gracia v. State*, Tex: Court of Appeals, 14th Dist. 2012, stating in footnote 1:

*"The jury did not find cruel treatment of a German Shepherd dog and some chickens, and those animals were ordered returned to appellants. See former Tex. Health & Safety Code § 821.023(g) (eff. Sept. 1, 2007 to Aug. 31, 2011)."*

The "Order" is a "blanket order" for an entire herd of horses. The holding of the Texas Court of Appeals in *Gracia v. State*, clearly shows there is no lawful justification for ordering horses in good condition taken from Petitioner. (*See* APPENDX "E" and APPENDIX "F" of the "Petition For Writ Of Certiorari" - C.R. pg. 51-54)

The Justice Court did NOT adhere to the codified single animal limitation. The Justice Court did NOT consider each and every single animal on its own merits, based on admissible evidence specific for each and every individual animal.

There is NO language codified by the Texas Legislature anywhere in the entire Texas Health & Safety Code § 821.021 et seq. which states, "if you find one animal to be cruelly treated, you must take them all." The language of the law is specific to "an animal" or "the animal" - not an entire herd, group, or collection of animals. The "Order" is issued in violation of the single animal protections codified into law by the Legislature. The "Order" includes animals that were in good condition, which must be

---

ordered returned to the owner according to 821.023(g). Because animals in good condition are included in this "Order" the "Order" exceeds the specific jurisdictional limitations placed by the Legislature on the Justice Court, making the "Order" void on its face. "A justice court judgment in excess of the jurisdictional amount is void on its face." *Dews v. Floyd*, 413 S.W.2d 800 (Tex.Civ.App. Tyler 1967).

To further exacerbate this situation, Rabe states: "...Appellant, in keeping with the law, was not entitled to a jury trial at the seizure hearing." The Texas Court of Appeals very clearly and very thoroughly describes that an animal owner clearly has the right to a Trial by Jury, before animals can be taken from the owner, in *Granger v. Folk, 931 SW2d (1996) Tex: 9th Dist. Court of Appeals* In *Granger v. Folk*, the Court of Appeals states:

"A close reading of paragraphs (a) and (b) of Section 821.023 may provide some slight illumination. Paragraph (a) presumes a criminal proceeding prior to the civil proceeding while paragraph (b) presumes the reverse. Obviously, in the criminal proceeding, a defendant may face loss of freedom or fine or both, whereas, a proceeding under Section 821.023 may subject the defendant to a loss, forfeiture and confiscation of property rights and interests. In either case, the defendant is entitled by right to all those guarantees affording full due process. The Court further states: "Sixth Amendment, United States Constitution. In Suits at common law, where

the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law. U.S. CONST. Amend. VII. The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.... TEX. CONST. art. I, § 15. It is fundamental to our system of justice and the intention and policy of the law to permit all persons to have a trial by jury of any facts affecting their property rights. _Clayton v. Clayton_, 308 S.W.2d 557, 564 (Tex.Civ.App.—Texarkana 1957, no writ).

The right to a jury trial as guaranteed by our Constitution is one of our most precious rights, TEX. CONST. art. I, § 15; TEX. CONST. art. V, § 10; _Young v. Blain_, 245 S.W. 65 (Tex. Comm'n App.1922, opinion adopted), and the denial of that right is a very serious matter. Restrictions placed on the right to a jury trial will be subjected to the utmost scrutiny. See _Jones v. Jones_, 592 S.W.2d 19 (Tex.Civ.App.— Beaumont 1979, no writ); _Rayson v. Johns_, 524 S.W.2d 380 (Tex.Civ.App.— Texarkana 1975, writ ref'd n.r.e.); _Silver v. Shefman_, 287 S.W.2d 316 (Tex.Civ.App.— Austin 1956, writ ref'd n.r.e.).

It is very clear that _Granger v. Folk_ is the legal authority which clearly

establishes that an animal owner has the inviolable, Constitutionally protected right to a jury trial before any animals can be legally "ordered" to be taken from the owner. As Rabe verifies in her "Appellee's Response To Appellant's Brief" Appellant was denied a trial by jury in the Justice Court, and therefore was denied her inviolable, constitutionally protected right to a trial by jury of any matter affecting her property rights. The County Court erred in denying the Motion To Vacate Void Order Issued by Justiced Court, Precinct 1, because the County Corut had the responsibility to uphold this Appellant's inviolable and Constitutionally protected right to a trial by jury.

This Court has the duty and responsibility to uphold this Appellant's inviolable and constitutionally protected right to a trial by jury, as already established by *Granger v. Folk,* "*It is fundamental to our system of justice and the intention and policy of the law to permit all persons to have a trial by jury of any facts affecting their property rights. Clayton v. Clayton,* 308 S.W.2d 557, 564 (Tex.Civ.App.—Texarkana 1957, no writ).

This Court has the further responsibility to uphold that "The right to a jury trial as guaranteed by our Constitution is one of our most precious rights, TEX. CONST. art. I, § 15; TEX. CONST. art. V, § 10; *Young v. Blain,* 245 S.W. 65 (Tex. Comm'n App.1922, opinion adopted), and the denial of that right is a very serious matter." This honorable Court has the responsibility to ensure that "Restrictions placed on the right to a jury trial will be subjected to the utmost scrutiny." See *Jones v. Jones,* 592 S.W.2d 19

(Tex.Civ.App.— Beaumont 1979, no writ); *Rayson v. Johns*, 524 S.W.2d 380

(Tex.Civ.App.— Texarkana 1975, writ ref'd n.r.e.); *Silver v. Shefman*, 287 S.W.2d 316

(Tex.Civ.App.— Austin 1956, writ ref'd n.r.e.).

The County Court erred in denying Appellant's Motion To Vacate Void Order

Issued By Justice Court, Precinct 1 because the "Order" is already null and void, having

been issued in excess of and in violation of the protections found codified by the

Legislature in THSC § 821.023(g). The County Court furthered erred in denying

Appellant's Motion To Vacate Void Order Issued by Justice Court, Precinct 1 because the

"Order" is already null and void having been issued in direct violation of this Appellant's

inviolable Constitutionally protected and guaranteed right to a trial by jury of any matter

affecting her property rights.


## APPELLANT'S REPLY TO APPELLE'S RESPONSE TO APPELLANT'S ISSUE NO. 3

### Appellant's Contention

The Justice Court erred in issuing the "Order Awarding Possession of Seized

Horses", denying Appellant her Constitutionally protected and guaranteed rights of

lawful due process under the law, a trial by jury of any matter affecting her property

rights, and protection from excessive fines.

## Appellee's Reply

The Justice Court did not err in issuing the "Order Awarding Possession of Seized Horses". Further Appellant was not deprived due process under the law, was not denied a trial by jury and was not denied protection from excessive fines.

## Appellant's Reply Argument:

If we are truly going to play by the rules and if we are going to abide by the law codified by the Legislature, then the ENTIRE law must be followed, and not just "portions" of the law wherever it can be "manipulated" to "fit" what law enforcement, prosecutors, or judges want it to say.

Rabe attempts to manipulate the language of the law by wrongfully stating, "...§ 821.0211 clearly allows for application to be in front of a justice of the peace **to the exclusion of other judges within the county**." [*bold, underline emphasis added*].

Actually, THSC § 821.0211 states something much different than Rabe's erroneous interpretation of the law:

THSC, Sec. 821.0211. ADDITIONAL DEFINITION. In this subchapter, "magistrate" means any officer as defined in Article 2.09, Code of Criminal Procedure, except that the term does not include justices of the supreme court, judges of the court of criminal appeals, or courts of appeals, judges or associate judges of statutory probate courts, or judges or associate judges

of district courts that give preference to family law matters or family district courts under Subchapter D, Chapter 24, Government Code."

THSC § 821.0211 excludes certain judges from presiding over matters concerning allegations of animal cruelty. THSC § 821.0211 does not say anything about allowing "... application to be in front of a justice of the peace **to the exclusion of other judges within the county**." [*bold, underline emphasis added.*]

Again, Rabe attempts to manipulate the law, when she states "Once an application is presented, the justice court judge shall issue a warrant to have the animal(s) in question seized if the statutory showing of "probable cause to believe the animal has been or is being cruelly treated" is met." Although, on the surface, or "at first blush", this statement appears to "sound" good, this is NOT what the law actually says. The law very clearly designates ONLY "an animal" or "the animal". Nowhere in the entire THSC § 821 statute does the language codified by the Legislature state "animal(s)" (*plural*). THSC actually says:

THSC, Sec. 821.022. SEIZURE OF CRUELLY TREATED ANIMAL. (a) "If a peace officer or an officer who has responsibility for animal control in a county or municipality has reason to believe that an animal has been or is being cruelly treated, the officer may apply to a justice court or magistrate in the county or to a municipal court in the municipality in which the animal is located for a warrant to seize the animal. (b) On a showing of probable cause to believe that the animal

has been or is being cruelly treated, **the court or magistrate** shall issue the warrant and set a time within 10 calendar days of the date of issuance for a hearing in the appropriate justice court or municipal court to determine whether the animal has been cruelly treated."[*bold, underline emphasis added*]

In these two statements, Rabe has quite subtly re-written the law to **"exclude"** **other judges in the county** from issuing a "warrant to seize the animal", and to say **"animal(s)"** (*plural*) when the fact really is that the actual law does NOT "exclude" other judges in the county from issuing a "warrant to seize the animal", and allows consideration for only a single individual "animal" at one time, thus complying with the warrant requirement of the 4th Amendment to "*particularly describe*" the item to be seized and the location where the item is located, as well as Article 1, Section 9 of the Texas Constitution mandate to describe the item to be seized and the location where the item is to found "*as near as may be.*" Only by describing ONLY a particular animal, will a warrant comply with the Legislative intent of "an animal" or "the animal", as well as comply with the 4th Amendment requirement to "*particularly describe*" and the Texas Constitution, Article 1, Section 9 requirement to describe "*as near as may be.*" Rabe's subtle re-writing of the law is the start down a very slippery slope of government infringement upon the constitutionally protected and guaranteed rights of this Appellant and eventually ALL animal owning citizens in general.

With regard to the lawfulness of the "Warrant" (C.R. pgs. 45 – 46), although

THSC § 821.022(b) allows that a warrant can be issued in a justice court, there is NO other directive contained in the entire § 821 Statute which directs the proper application for, issuance of, service of, and return for a warrant to seize an animal. In footnote No. 5 of *Pine v. State*, 921 SW 2d 866 (1996), the Texas Court of Appeals shows that the "Warrant" is controlled by Chapter 18 of the Texas Code of Criminal Procedure. Since there is NO direction for the lawful procedures concerning a warrant anywhere in the language of THSC § 821, and since TCCP Chapter 18 controls the Warrant authorized by THSC § 821.022(a), there is a huge conflict within the law that must now be addressed by the Legislature. The conflict is the fact that TCCP 18.01(c) very clearly states that ONLY judges who are licensed attorneys with the state may issue a warrant to search/seize. Here lies the great problem within the language of the law, that can ONLY be corrected by the Legislature. No judge has the authority to "write" new law... and since the THSC § 821 statute does NOT contain any direction for the application for, issuance of, service of or return for a lawful warrant, then TCCP Chapter 18 controls. Understanding that the warrant authorized by THSC § 821.022(a) MUST comply with TCCP Chapter 18, then layman non-lawyer Justices of the Peace are clearly excluded from issuing a "warrant to seize the animal." TCCP Chapter 18.01(c) clearly excludes justices of the peace who are NOT licensed attorneys with the state, from issuing a "warrant to seize the animal." Thus, the "Warrant" issued by layman non-lawyer Justice of The Peace Yvonne King (C.R. pg. 46) is in direct violation of the

language of the law found in TCCP 18.01(c) which CONTROLS the issuance of the "warrant to seize the animal", authorized by THSC § 821.022(a).

Appellant alleges that the "Warrant" used to take the entire herd of horses from her property is NOT valid, because it was signed by a layman, non-lawyer in direct violation of TCCP 18.01(c).

Rabe states, "The statute [*821*] refers to the right to a hearing but does not allow for a jury trial." Rabe is a licensed attorney and as such has supposedly been trained in Constitutional law, yet she is claiming that if the statute doesn't provide for the right to a trial by jury, then it is proper to deny this Appellant a trial by jury, which is in complete violation of Appellant's inviolable, Constitutionally protected and guaranteed right to a trial by jury. As previously shown, *Granger v. Folk* clearly establishes that an animal owner has the inviolable right to a trial by jury of any right affecting her property rights. Animals are considered property under the law. *Arrington v. Arrington, 613 SW 2d 565 - Tex: Court of Civil Appeals, 2nd Dist. 1981.* Livestock animals are considered "highly perishable property" under the law. *Missouri-Kansas-Texas R. Co. v. Roegelein Pro. Co., 260 SW 2d 605 - Tex: Court of Civil Appeals, 4th Dist. 1953.* As such, there is no question that "animals" are considered "property" under the law, thus this Appellant has the inviolable right to a trial by jury of any matter affecting her property rights. *Granger v. Folk, 931 S.W.2d 390 (Tex. App. Beaumont 1996) citing Clayton v. Clayton, 308 S.W.2d 557, 564 (Tex.Civ.App.--Texarkana 1957, no writ)*

Rabe states, "Appellant received timely notice of the hearing..." however, Rabe fails to tell the Court that Appellant was not given any notice as to which animal was to be the subject of the hearing. The only notice which Appellant received about any hearing is contained on the face of the Warrant. (C.R. pg. 46). The "notice" paragraph is clearly confusing and provides NO notice of exactly "which" individual animal is to be the subject of the hearing. The paragraph containing the only "notice" which this Appellant received, states:

"You are therefore commanded to forthwith seize and impound the **animals** (*plural*) described in application or located on the premises identified in the application which is/are alleged (to be) or (to have been ) cruelly treated, and you will also give written notice to Carol Paselk, the alleged owner(s) of said animal(s), that a hearing will be held in the J.P. Court of Hopkins County, Texas, at the Justice Of the Peace, 298 Rosemont Street, Sulphur Springs, Hopkins County, Texas on the 19th day of May, 2009 at 1:30PM to determine whether **the animal** (*singlular*) has been cruelly treated." [*bold, underline, and italics added for emphasis*]

The ONLY animals listed on the "Application For Warrant To Seize Animals" are "55 Arabian Breed Studs And Mares."(C.R. pg. 45). There is nothing indicated anywhere in the "notice" exactly "which" individual animal was to be the subject of the hearing, as stated in the "notice" "...to determine whether **THE ANIMAL** has been

cruelly treated." [*bold, underline, and caps added for emphasis*] NO Thoroughbred breed horses or Geldings are listed anywhere on the "Warrant" or the "Application." (C.R. pgs. 45-46). Approximately half of the horses taken from Appellant's property were Thoroughbred breed horses, and two Geldings were taken, (C.R. pgs. 51-54) all of which were NOT particularly described as near as may be on the "Warrant" or the "Application", so can not in any way be considered to be "noticed" for the hearing. With no description indicating any particular animal, Appellant had no idea which animal was to be the subject of the hearing, and had no idea what the allegations against her or the animals were. Appellant was deprived of the right to be properly noticed about the court proceeding so that she could prepare a proper and adequate defense.

As clearly shown, horses in good condition were taken from Appellant's property, and were included in the "Order" in violation of THSC § 821.023(g).(C.R. pgs. 51-54) Including horses in good condition, violates not only the protections of THSC § 821.023(g), but also violates this Appellant's right to be free from excessive fines or cruel and unusual punishments. Rabe states, "As to excessive fines, I am unaware of any excessive fines Appellant was ordered to pay as tied to the seized horses." Horses which were in good condition were made part of the "Order" (C.R. pg. 55), in direct violation of THSC § 821.023(g) and Appellant's 8th Amendment right to be free from excessive fines and cruel and unusual punishments. Horses made subject to the "Order" which were in good condition, in violation of THSC § 821.023(g) can be considered

nothing less than "excessive fine" and also cruel and unusual punishment against this Appellant.

A professional licensed Veterinarian is the ONLY lawful voice which can speak about the true condition of any animal. At the time the animals were taken from Appellant's property, No professional licensed Veterinarian was on-site to evaluate any of the horses BEFORE they were removed from Appellant's farm property. No professional evaluation establishing the condition of any horse was complete by a licensed Veterinarian BEFORE any horse was removed from Appellant's property. No professional Veterinarian established any grounds for any allegations against this Appellant of animal cruelty BEFORE any horse was removed from Appellant's property. With NO professional licensed Veterinarian on-site at the time of the seizure, and with NO evaluation of any horse by a professional licensed Veterinarian BEFORE any horse was removed from the property, there is NO way the State can establish ANY "beginning" chain of custody of the evidence, therefore there is NO way to prove that the condition of any horses was not altered AFTER they were removed from the property. There was also NO court ordered directing how the horses were to be safely kept after they were removed from Appellant's farm, in violation of TCCP §18.10 & § 18.11.

With NO court order directing the manner of safe keeping, and with NO professional evaluation of any horse BEFORE it was taken from Appllant's farm, there

is no possible way to show that the condition of any horse was NO altered by the private citizens who ended up the beneficiaries of the "Order." This is a great denial of Appellant's right to lawful due process of law.

With regard to the denial of Appellant's right to an appeal, Rabe states: "Appellant claims she was unable to appeal the outcome of the seizure hearing. Please note that such an appeal was not allowed under the law in place at the time of the hearing. Judge King ordered the horses be given to two different non-profit animal protection agencies instead of having the seized horses sold at public auction. At the time the "Order" was signed, an individual could only appeal an order that animals be sold at public auction and could not appeal an order transferring animals to a cruelty prevention society. *Pitts v. State* (App. 14 Dist. 1995) 918 S.W.2d 4, rehearing overruled."

Rabe attempts to use *Pitts v. State* to say that Appellant had no right to an appeal. In 1996, a year after the *Pitts v. State* decision, in 1996, the Court of Appeals clearly shows the problem with the *Pitts* decision, stating in *Granger v. Folk*, 931 SW2d (1996) 9th Dist. Court of Appeals.: "...the State of Texas represented by the County Attorney for Jasper County, Texas, represents that not only is Relator not entitled to a jury trial under Section 821.021 et seq, Relator is not entitled to a de novo appeal from justice court to county court. We hold that Relator is not only entitled to a jury trial under Section 821.021, as a matter of right, but is also entitled to appeal. Thus, this Court comes to irreconcilable crossroads with our Fourteenth Court of Appeal's discussion in *Pitts v.*

*State,* 918 S.W.2d 4, 5 (Tex.App.— Houston [14th Dist.] 1995, orig. proceeding). *Pitts* held that our State Legislature "specifically" limited the rights of appeal in these cases to those involving animals ordered sold at public auction. Id. at 4. We are not here questioning our Legislature's authority to place limits on certain appeals. We are saying that Section 821.025 does not operate as a limitation on appeals from Justice Court, but rather a continuation, if not an expansion, of one's appellate rights under Section 821.021 et seq. To view otherwise would functionally restrict rights to appeal and make meaningless the statutes and rules which provide for appeals from justice courts. Tex. Gov't Code Ann., § 26.042(e) (Vernon 1988); Tex. Civ. Prac. & Rem.Code Ann. § 51.001 (Vernon 1986); Tex.R. Civ. P. 571-574."

Clearly, this Appellant was wrongfully denied the opportunity to appeal the "Order", issued in a justice court, by a layman non-lawyer, when justice court decisions are NOT considered res judicata or final. The "Order" took horses in good condition from Appellant in direct violation of the protections of THSC § 821.023(g), as well as in direct violation of her 8th Amendment rights.

## APPELLANT'S REPLY TO APPELLE'S RESPONSE TO APPELLANT'S ISSUE NO. 4

## Appellant's Contention

The justice Court erred in issuing the "Order Awarding possession of Seized

Horses" in violation of 8th Amendment Protections.

## Appellee's Reply

The Justice Court did not err in issuing the "Order Awarding Possesson of Seized Horses" in violation of Appellant's 8th Amendment Protections.

## Appellant's Reply Argument:

Even though this Court must consider ONLY the "Order" in this case, since Rabe has brought up the proceeding in the County-Court-At-Law, and that court is a court of record, some official court testimony may prove to be beneficial for this Court to see that Rabe makes false statements.

1. In his official eyewitness report, filed May 1, 2009, nine days before the seizure, Sgt. Tanner Crump states: "Not all of the horses were poor and she has a rotation plan for the horses on the grazing land she owns. Most of the horses that were poor were older horses and it is expected that they would not look as good as horses that were younger." Crump further stated, **"I do not feel that the horses are in need of immediate care or removal from the owner."**(C.R. pg. 44)

2. Photos of horses found six days AFTER they were taken from Appellant's property show horses in good condition which, according to THSC 821.023(g) should never have been included in the "Order". (C.R. pgs. 51-54)

3. Photos of Hay and grain usage for ten days BEFORE the seizure clearly shows Appellant was providing feed to the horses. (See EXHIBIT No. 1)

4. States witness Melanie DeAeth, who instigated the "raid" against this Appellant and eventually ended up taking all the horses, as the beneficiary of the "Order", testified in the County-Court-At-Law: "Yes, right. There were some that were okay. There was one pasture that probably had enough grass and was maintaining those horses." (R.R. State v. Paselk, CR0926723, 10/27/09, Vol. 3 of 6, pg. 62, lines 12-14.) Thirty eight mares were in pasture. (See EXHIBIT No. 2 &3)

5. When asked IF he would have a different opinion IF he had been told that Appellant Paselk was feeding the horses, Chief Deputy Rickey Morgan testified: "I would have. She would probably still have the horses today because she was attempting to feed them." (R.R., State v. Paselk, CR0926723,10/27/09 Vol. 3 of 6, pg. 285 lines 16 – 25) (See EXHIBIT No. 4)

These five items clearly show that horses in good condition included in the "Order" making the "Order" already null and void as it is written, in complete violation of THSC 821.023(g). Rabe has made broad, sweeping statements of untruth, for which she has supplied NO admissible evidence to back these statements up. Taking horses from Appellant that were in good condition, in violation of THSC § 821.023(g) clearly shows Rabe's statement, "The horses seized were **all** in extremely poor condition..." is

FALSE. Rabe has a duty to TELL THE TRUTH. According to TCCP 2.01, Rabe also has a duty not to convict, but to see that justice is done. And, according to TCCP 2.01, Rabe has a duty to "not suppress facts or secrete witnesses capable of establishing the innocence of the accused." Rabe's statement concerning the condition of the horses is FALSE, it suppresses true facts, and it secretes "witnesses" (the horses) capable of establishing the innocence of this Appellant. Rabe's use of the word "ALL" is NOT a mistake... it is an intentional qualifier meant to have this Court believe something that is NOT true.

Rabe again provides another FALSE statement to this Court when she states Appellant was "...not exposed to excessive fines," however, ordering horses taken which were in good condition is an excessive fine which far exceeds the language and limitations of the law, especially THSC 821.023(g).

Rabe makes broad, sweeping FALSE statements and fails to present any admissible evidence to back up her claims. The ONLY thing Rabe has presented is FALSE statements to this Court.

## CONCLUSION

This Court has the responsibility and duty to make sure that this Appellant's lawful protections, as well as her Constitutionally protected and guaranteed rights are NOT infringed upon by the State. The "Order" is the issue in this case, which clearly

violates Texas Health & Safety Code 821.023(g). The "Order" was issued as a result of the violations of Appellant's lawful protections provided by the Legislature in THSC 821.023(g), as well as the denial of proper due process of law, and the violation of Appellant's Constitutionally protected and guaranteed rights. Although Appellant's Petition For Writ of Certiorari was untimely filed, according to the TRCP Rule 579 90 day time limit, Justice demands that this Court waive the Rule and exercise its constitutional responsibility to take jurisdiction of this case. This Court has the responsibility to recognize that the Rule is not jurisdictional, but directory only, and because it conflicts with the justice of this case, it is justice and not the rule which must prevail. This case is a situation where this Court must determine that Rules should implement rather than prevent the administration of justice.

Appellant has clearly shown that the "Order" issued by layman non-lawyer Yvonne King clearly violates the language and protections codified by the Legislature in Texas Health & Safety Code 821.023(g) by including horses that were in good condition in the "Order". This Court has the duty to quash/vacate/over-rule the "Order" since it is already null and void in violation of THSC 821.023(g). Appellant has clearly shown that Rabe has provided FALSE statements to this Court. Appellant has clearly shown that the "Order" issued by layman non-lawyer Yvonne King is already void because it is issued in direct violation of the protections of THSC 821.023(g), as upheld in *Gracia v. State*. Appellant has clearly shown that the presentation of this case to this Court is not

frivolous and is not without legal merit.

## PRAYER

Appellant prays that this Court will protect this Appellant's lawful protections and Constitutionally protected and guaranteed rights, and vacate the already legally null and void "Order." Appellant further prays this Court will waive the directional time limit of TRCP Rule 579 and exercise its constitutional responsibility to take jurisdiction of this case, in favor of the Justice this case clearly demands. Appellant prays this Court will vacate the already null and void "Order Awarding Possession of Seized Horses" which includes horses in good condition in violation of THSC 821.023(g).

Respectfully Submitted,

Carol Paselk, Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210

## CERTIFICATE OF COMPLIANCE

Pursuant to TRAP Rule 9.4(i)(3), in making this Certificate of Compliance, I am relying on the word count provided by the Libre Office 4.2.5.2 computer software used to prepare this document. In compliance with TRAP Rule 9.4(i)(2)(B), according to the Libre Office word-count function, this Appellant's Reply Brief contains 6.995 words. In compliance with TRAP 9.4(e), the typeface used in this Brief is no smaller than 14-point, except for footnotes, which are no smaller than 12-point.

Carol Paselk, Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing "Appellant's Brief" has been sent by USPS mail to Justice of The Peace, Precinct 1, Yvonne King, 128 Jefferson Street, Suite G, Sulphur Springs, TX 75482, on the _____ day of _____, 2014.

Carol Paselk, Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210

**EXHIBIT No. 1  -  hay on hand**



05/03/2009

On Sunday, May 3, 2009, there were over 80 bales of hay in the barn.



On Saturday, May 9, 2009, on the day of the seizure there were ten bales of hay in the barn. Another 80 bales were scheduled to be picked up on Sunday morning. This photo shows the "mess" that the rescuers left the barn in. They tore open hay bales and scattered hay all over the inside of the barn and all over the alleys between the stalls and pens, leaving a huge mess. They destroyed a huge, almost brand new, industrial size barn fan, and marked the walls of the barn with their marking "crayons". They broke the hinges off one of the gates, when there was NO reason to have done so. They left cigarette butts everywhere. They had NO respect for anything on the property. Melanie DeAeth testified that the horses in pasture were okay.



"Rescuers" left the barn a mess. They tore open hay bales and hay was strewn everywhere. Another 80 bales of hay was scheduled to be picked up the next morning - Sunday morning, May 10, 2009.



05/09/2009

On Saturday, May 9, 2009, at the time the "rescuers" stole the horses, there were fourteen 50lb. bags of 14% pellets in the feed room that had been purchased the night before – receipt of which was provided as evidence in court. There was approximately 20 pounds of a twenty five pound bag of Cal Manna supplement.



On Saturday, May 9, 2009, along with the 14 bags of pellets, there was a large stack of empty feed bags,  clearly indicating that the horses were being fed, over a long period of time.

## EXHIBIT NO. 2
Fat Mares in pasture 1 month before the seizure.





# EXHIBIT N. 3

some of the horses were in stalls?

A. Right. That's true. There were horses -- the horses that were inside and in the manure also had no ventilation, no daylight, but there was a pasture out back that had some horses in it.

Q. And overall there would be a few horses that if you just took a snapshot of those two or three --

A. Right.

Q. -- they would be --

A. Right.

Q. -- I guess considered okay?

A. Yes, right. There were some that were okay. There was one pasture that probably had enough grass and was maintaining those horses.

Q. But as a whole, what would your opinion be?

A. But the majority of it was gross neglect, gross abuse. You know, those animals were suffering. They didn't see daylight. They didn't have pens big enough to walk. Their hooves were out and under, so they never touched the ground, you know, starving, horses in pain, the one that had laid there and died all night, you know, suffered and died, you know, just gross neglect and abuse.

Q. And if you are looking at this case as to what is best for the horses, what, if anything, would

KAYLA R. SCOTT, CSR, RPR      (214) 534-9424

week's time.

A. Well, at that particular time when Sergeant Crump went out there, he didn't know of any history of Ms. Paselk. He kind of felt sorry for her, and from what she was telling him, he was going to give her time to -- he saw feed. He saw wormer. He didn't know anything about the rescue group's prior dealings with her, and she just wasn't doing anything. I mean, the day we went out to serve the seizure papers, the feed was still there, and the wormer was still there in the bucket, and she hadn't even attempted to do anything. So after Lieutenant Turner and I had discussed it, we just kind of took it upon our own to go see Ms. Rabe and get the seizure papers because the horses would be starved to death.

Q. And on the flip side of that, if what she had told Mr. Crump compared to what we knew of the rescue groups and their involvement had been true, if they were still going to work with her, if there was going to continue to be a supply of food or wormer, if what she had told Mr. Crump he wrongly or rightly believed, if that were true, would you have a different opinion?

A. I would have. She would probably still have the horses today because she was attempting to feed

KAYLA R. SCOTT, CSR, RPR      (214) 534-9424

The Court needs to consider that the "rescues"testified that they were NOT supplying continuing support which they could withdraw from Appellant. Appellant had been purchasing feed on her own for months without the support of any "rescue."